829 So.2d 778 (2002)
MILLER AND MILLER CONSTRUCTION COMPANY, INC.
v.
Gary Wayne MADEWELL.
2000683.
Court of Civil Appeals of Alabama.
March 22, 2002.
*779 David M. Wilson and Jonathan L. Berryhill of Wilson & Berryhill, P.C., Birmingham, for appellant.
J. Barton Warren, Huntsville, for appellee.
PITTMAN, Judge.
This is the third appeal in this case. See Miller & Miller Constr. Co. v. Madewell, 736 So.2d 1098 (Ala.Civ.App.1998), rev'd, 736 So.2d 1104 (Ala.1999), opinion on remand from the Supreme Court, 736 So.2d 1107 (Ala.Civ.App.1999) ("Miller I"), and opinion on return to remand, Miller & Miller Constr. Co. v. Madewell, 766 So.2d 855 (Ala.Civ.App.2000) ("Miller II").
Miller II states the factual and procedural history of the case as follows:
"In the previous appeal Gary Wayne Madewell (`the employee') had moved for a summary judgment, contending that he was entitled to future medical benefits, pursuant to § 25-5-77, Ala. Code 1975. Miller and Miller Construction Company, Inc. (`the employer'), also had moved for a summary judgment, contending that the employee must exhaust all the proceeds from the settlement of his products-liability claim against third-party defendants before the employer would be liable for any future medical benefits. The trial court entered a summary judgment in favor of the employee, and the employer appealed. The sole issue in the prior appeal was `whether the court erred in entering a summary judgment in favor of [the employee] on his claim for future medical benefits.' Miller & Miller Constr. Co., 736 So.2d at 1099. This court affirmed the trial court's summary judgment in favor of the employee.
"However, our supreme court reversed the judgment and remanded the case to this court
"`with instructions to have the trial court conduct a hearing to determine, using equitable principles applicable to subrogation rights, which part of [the employee's] settlement is attributable to medical expenses. The Court of Civil Appeals should also instruct the trial court to enter an order allowing [the employer] to be subrogated to that portion of [the employee's] third-party recovery that is attributable to the future medical expenses [the employer] would be legally required to pay.'
"Ex parte Miller & Miller Constr. Co., 736 So.2d 1104, 1105 (Ala.1999) (footnote omitted). In a footnote, our supreme court referred to Powell v. Blue Cross & Blue Shield, 581 So.2d 772, 774 (Ala. 1990), as the caselaw governing subrogation rights. This court followed our supreme court's instructions on remand. See Miller & Miller Constr. Co. v. Madewell, 736 So.2d 1107 (Ala.Civ.App. 1999).

*780 "On remand, the trial court conducted a hearing in August 1999 `to determine, using equitable principles applicable to subrogation rights, which part of [the employee's] settlement with the third party is attributable to future medical expenses.' The trial court, relying upon Powell, 581 So.2d at 774, found that the employee's $400,000 settlement with the third-party defendant did not `equitably or fully compensate [the employee] for the injuries he sustained on November 10, 1994,' and that `no portion of the $400,000.00 settlement is attributable to future medical costs.' The trial court denied the employer's subrogation claim.
"The employer appeals, contending that the trial court erred in applying the `made-whole' provisions of Powell, 581 So.2d 772....
"When the trial court conducted its August 1999 hearing, Powell, 581 So.2d 772, was the caselaw governing subrogation rights. However, in Ex parte State Farm Fire & Casualty Co., 764 So.2d 543 (Ala.2000), our supreme court overruled Powell, 581 So.2d 772, and other cases that apply the Powell rule."
766 So.2d at 855-56. This court then reversed the trial court's judgment and remanded the cause to the trial court with directions as follows:
"Thus, because the trial court in the present case applied Powell, which has since been overruled, we must reverse the trial court's judgment and remand for proceedings consistent with this opinion."
766 So.2d at 856.
On remand, the trial court held a hearing, reviewed the evidence from the prior hearings, and entered a judgment, which states, in pertinent part:
"The [trial court] finds that the settlement of $400,000 between [the employee] and [the third-party defendant] did not encompass nor did it include any sum attributable to future medical expenses....
". . . .
"The [trial court] has reviewed the record very carefully in an effort to determine what portion of the plaintiff's settlement with the third party was attributable to future medical expenses. After reviewing the evidence in its entirety and determining the credibility of witnesses, the trial court is unable to find any figure that represents settlement of future medical expenses. If the trial court were to select a number that is not supported by [the] evidence, this would be asking the trial court to speculate on damages and issue a decision without evidence to support that decision. In contrast, the damages for pain, suffering, mental anguish and permanent injury are, in fact, supported by the testimony of the witnesses who are found to be credible by [the trial court].
"Therefore, the trial court finds that no portion of the [employee's] settlement with [the third-party defendant] is attributable to future medical expenses. The subrogation claim for future medical expenses by the employer is denied."
The employer appeals and argues that the trial court erred by finding that no portion of the third-party settlement is attributable to future medical expenses. Our supreme court has stated that "it is in the capable hands of the trial judges presiding over the third-party actions to determine to their satisfaction the amount of each award in a third-party action to be attributed to the employee's medical (or vocational) expenses." Ex parte BE & K Constr. Co., 728 So.2d 621, 624 (Ala.1998). However, we conclude that in this case the trial court erred by finding that none of the third-party settlement was attributable to future medical expenses. Such a finding *781 is not supported by the evidence in the record.
Karen Crockett, a registered nurse and the owner of a private rehabilitation facility, performed a medical-needs analysis for the employee. Her analysis indicates that the employee will have a $1,200 to $2,500 annual expense for doctor visits. Dr. Lynn Boyer, a neurologist who is treating the employee, submitted an analysis that the employee will be taking several prescription medications on a long-term basis including pain medication, antidepressants, antiseizure medication, and other medication for various medical problems resulting from his work-related head injuries. The record indicates that the cost for these medications could exceed $5,000 per year.
The amounts projected for the future medical expenses of the employee are in dispute. The trial court's finding that no portion of the settlement agreement was attributable to medical expenses, however, is not supported by the record. Therefore, we reverse the trial court's judgment finding that no portion of the settlement is attributable to future medical expenses. We remand the cause to the trial court with instructions for the trial court to reconsider the evidence in the record regarding future medical expenses and apportion a part of the settlement as future medical expenses.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, J., concurs.
CRAWLEY and MURDOCK, JJ., concur in the result.
YATES, P.J., dissents.
MURDOCK, Judge, concurring in the result.
I am not persuaded that the inquiry to have been made by the trial court on remand was a purely factual one. While the evidence of anticipated or possible future medical expenses certainly is part of the inquiry, it appears that the inquiry necessarily was intended to be a mixed question of law and fact. Specifically, the Supreme Court mandated as follows in this case:
"Pursuant to this Court's reasoning in Ex parte BE & K Construction Company, 728 So.2d 621 (Ala.1998), the judgment of the Court of Civil Appeals is reversed and the cause is remanded with instructions to have the trial court conduct a hearing to determine, using equitable principles applicable to subrogation rights, which part of Madewell's settlement is attributable to medical expenses."
Ex parte Miller & Miller Constr. Co., 736 So.2d 1104, 1105 (Ala.1999) (footnote omitted; emphasis added). The Supreme Court further explained in a footnote:
"`The entire law of subrogation, conventional or legal, is based upon equitable principles. The equitable considerations that are the underpinnings of subrogation are (1) that the insured should not recover twice for a single injury, and (2) that the insurer should be reimbursed for payments it made that, in fairness, should be [made] by the wrongdoer.'"
736 So.2d at 1105 n. 1 (quoting Powell v. Blue Cross & Blue Shield of Alabama, 581 So.2d 772, 774 (Ala.1990)).
In Ex parte BE & K Construction Co., 728 So.2d 621 (Ala.1998), the case upon which the Supreme Court relied in issuing the foregoing mandate, the Supreme Court held that the trial court must determine what amount of the recovery from a third-party tortfeasor "is attributable" to the employee's medical expenses. The Supreme Court explained that equitable principles of subrogation governed this inquiry. The Supreme Court also noted:
"In reaching this conclusion, we recognize that when a workers' compensation *782 claimant has also filed a third-party action, the parties in the third-party action should make a concerted effort to ensure that any recovery, whether by settlement or by trial, is fairly apportioned so as to designate how much of the recovery is attributable to medical (and vocational) expenses, both past and future. Therefore, it is in the capable hands of the trial judges presiding over the third-party actions to determine to their satisfaction the amount of each award in a third-party action to be attributed to the employee's medical (or vocational) expenses."
728 So.2d 621 at 624 (emphasis added).
I note that the task described in BE & K of determining what portion of a recovery from a third-party tortfeasor is attributable to future medical expenses applies equally to recoveries made as a result of a trial (jury or bench) or a settlement agreement. If, as has been suggested, this inquiry is treated as a purely factual one, we will necessarily convert the question before the trial court from what portion of a recovery is equitably attributable to future medical expenses to what portion of a recovery was actually attributed to future medical expenses. If this is done, a trial judge presiding over a jury trial of the claims against a third-party tortfeasor would be required to invade the collective mental operation of the jury in some effort to determine what unspoken portion of the jury's damages award the jury actually attributed to medical expenses. Obviously, this is not what BE & K intended. Instead, the trial court must review the evidence before the jury and, on the basis of that evidence and the equitable principles of subrogation, must attribute to future medical expenses that portion of the jury's damages award, if any, as may be equitably attributable to those expenses. In my view, that process is one that, by its nature, inherently addresses a mixed question of law and fact. Compare Anthem Casualty Ins. Co. v. Murray, 246 Ga.App. 778, 542 S.E.2d 171 (2000) (where workers' compensation payor has subrogation lien against recovery for economic losses from third-party tortfeasor if employee has been fully compensated for both economic and non-economic losses, question of whether employee has been so compensated is a mixed question of law and fact).
By the same token, where a recovery is the result of a settlement, the inquiry for the trial court is not a purely factual inquiry. The inquiry is not solely one of what portion of the recovery the partiesneither of which is the employer or its insurer, and neither of which represents the interest of the employer or the insurer in structuring the settlementactually attributed to future medical expenses. As in the case of a recovery resulting from a trial, the trial court must examine not only the evidence before it, but also must apply the "equitable principles applicable to subrogation rights" to determine what portion of the recovery, in equity, is to be considered attributable to future medical expenses.
In the present case, the great weight of the evidence is to the effect that all parties understood that there would be at least some continuing medical expenses for the plaintiff. Among other things, at the time of the settlement, all parties knew that the plaintiff was continuing to take various medications, and the testimony of the plaintiff's neurologist was consistent with the idea that the plaintiff would continue to incur medical expenses. Further, I note that the settlement agreement between the plaintiff and the third-party tortfeasor states, in part:
"That in determining [the settlement sum] there has been taken into consideration not only the ascertained injuries, disabilities, and damages, but also the possibilities that the injuries sustained *783 may be permanent and progressive and recovery therefrom uncertain and indefinite, so that consequences not now anticipated may result from said occurrence."
In another portion of the settlement agreement, the parties agreed:
"We do further acknowledge, pursuant to the agreement of the parties, that, while we do not accept [the settlement sum] as including payment for the cost of future medical care that may be rendered to the undersigned, Gary Wayne Madewell, said sum is accepted as consideration for the release of all claims for all damages of any kind that we may have against the parties hereby released."
(Emphasis added.) The defendant argues that in this latter provision the parties, without any input from the employer or its insurer, purport to release the third-party tortfeasor from liability for any future medical expenses while simultaneously purporting to reserve a claim against the employer or its insurer for the same future medical expenses. The defendant argues that this is an effort to preserve a right to double recovery.
I also note that the tortfeasor's attorney testified only that the settlement amount of $400,000 did not include "a sum certain which was set aside for future medical expenses" and that the settlement agreement did not "set up any type of medical costs trust." (Emphasis added.) He did not testify that the settlement agreement did not represent some discounting of the likelihood of future medical expenses. In response to a question from the court, the attorney testified:
"I don't find that I really ever identified a dollar and cent amount of what anybody projected that number to be. It was my understanding there would or could be some future expenses, as I recall, primarily in the form of medication. But as far as whether it was likely to, say, be further surgery or anything like that, I don'twe didn't put any value on it. We didn't have a number on that, or if we did it justit fell through the cracks. I'll put it that way."[1]
(Emphasis added.)
Based upon equitable principles of subrogation and the evidence presented in this case, I do not believe the record supports the conclusion that, in equity, no portion of Madewell's settlement with the third-party tortfeasor should be deemed attributable to the prospect of future medical expenses. Accordingly, I concur in the result reached by the main opinion.
CRAWLEY, J., concurs.
NOTES
[1] The record developed on initial remand from this court also contains testimony from Madewell and Karen Crockett, a registered nurse, confirming that Madewell has continued, and will continue, to incur various medical expenses.