895 So.2d 916 (2002)
SKILSTAF, INC.
v.
Michael WILLIAMS.
2001172 and 2001250.
Court of Civil Appeals of Alabama.
September 20, 2002.
James H. McFerrin of Southeastern Legal Group, L.L.C., Birmingham; and Wallis Haynes, Birmingham, for appellant.
Jeffrey C. Rickard and Thomas M. Powell of Marsh, Rickard & Bryan, P.C., Birmingham, for appellee.
CRAWLEY, Judge.
In April 1997, Michael Williams ("the worker"), an employee of Skilstaf, Inc., was working at a mobile-home assembly plant when an overhead scaffold fell on him. The worker suffered spinal injuries that resulted in paraplegia.
*917 In November 1997, the worker sued eight named defendants and various fictitiously named defendants who had designed, constructed, and installed the scaffolding. That action was docketed in the circuit court as case number CV-97-398, and it is before us on appeal as case number 2001250. Skilstaf moved to intervene in the worker's action, and the circuit court allowed Skilstaf to intervene conditionally. The court's order states that Skilstaf "shall share in any judgment or settlement obtained by [the worker] in this matter, up to the limits of its subrogated interests," but provides that Skilstaf "shall not be allowed to participate actively prior to or at the trial."
In March 1999, the worker sued Skilstaf, seeking workers' compensation benefits. That action was docketed in the circuit court as case number CV-99-94, and it is before us on appeal as case number 2001172. The trial court consolidated the two cases and treated its orders in the third-party action as applicable to the workers' compensation action. It is apparent, however, that there has been no final judgment in the workers' compensation action, and the appeal in that case must be dismissed.
On September 13, 2000, after mediation, the worker settled with seven of the eight third-party defendants in case number CV-97-398 for a total of $1 million. The settlement agreement states:
"Given [the worker's] significant permanent physical impairment, disfigurement, loss of earnings, loss of earning capacity, past medical expenses, physical pain and suffering, mental anguish and loss of enjoyment of life, the parties hereto hereby stipulate and agree that no portion of this settlement should be considered recovery for future medical or vocational expenses."
(Emphasis added.) After the settlement was reached, the worker moved the trial court to conduct a hearing to determine Skilstaf's subrogation rights. At a hearing on October 6, 2000, the parties presented testimony that the worker was 34 years old; that he had a life expectancy of 36.6 more years; and that Skilstaf had already paid him $21,870.50 in temporary total disability benefits and $406,615.86 in medical expenses. Brenda Harris, the claims adjustor for Risk Reduction Services, the third-party administrator for Skilstaf's workers' compensation claims, testified that the worker's anticipated future medical expenses were over $542,000.
The worker's counsel testified that the parties to the mediation intended that no part of the settlement should be attributed to future medical expenses. He candidly explained:
"[W]hen you look at this man's injury, you look at past lost wages, you look at future lost wages, you look at pain and suffering, mental anguish, loss of his enjoyment of life, his past medical bills, and every other element of damage that he has recoverable to him, and you compare that to the amount of settlement that we were able to obtain, there's just simply not enough there to go around. And so every element of his damages unfortunately [was] discounted. Severely. I mean in a perfect world, we would have gotten multiples of what his damages were. But we, because of the complexities and the difficult nature of the case, weren't able to do that.
". . . Unfortunately we weren't able to make [the worker] whole through [the settlement]. Nobody in this room would think. . . that [the worker] has been made whole by this settlement. And when you sit down and you look at the amount of damages that he has in every area, you get to future medicals, and *918 he's got workmen's comp insurance to cover that, so there's no need to allocate any money from this settlement toward future medicals."
On October 13, 2000, the trial court entered an "Order Regarding Subrogation Interests" in both cases  CV-99-94 and CV-97-398  that states, in pertinent part:
"[A] total of $428,486.36 in worker compensation benefits have been paid. Skilstaf is entitled to $255,091.82 ($428,486.36 less 40% attorney fees) in subrogation from [the worker].
"Since there has been no trial on the [workers' compensation] case, the Court includes possible future disability payments referred to and Skilstaf is entitled to a credit against [the worker's] award for that amount, when ascertained, less 40% attorney fees to [the worker's] attorney.
"According to the testimony of Brenda Harris, the claims adjustor for [the worker's] worker comp[ensation] case, his future expected medical costs related to his on-the-job injury would be $542,311.22.
"There is no dispute that Skilstaf is due to be subrogated to the amount of those expenses already paid, less 40% for [the worker's] attorney fees. The Court now has to decide, using equitable principles of subrogation, how much, if any, of the pro tanto settlement award is attributable to future worker compensation medical or vocational expenses. The Court finds from the affidavit of Jeffrey C. Rickard, one of [the worker's] attorneys, and the Pro Tanto Release and Settlement Agreement introduced at the hearing, that it was the clear intent of the parties to the partial settlement that no part of the one million ($1,000,000) dollars is attributable to such future medical or vocational expenses. In the absence of fraud, a release supported by valuable consideration and unambiguous in meaning will be given effect according to the intentions of the parties as found within the four corners of the instrument. Boggan v. Waste Away Group, Inc., 585 So.2d 1357 (Ala.1991). Also, § 12-21-109, Code of Alabama 1975, provides that `all receipts, releases, and discharges in writing, whether of a debt of record, a contract under seal or otherwise, and all judgments entered pursuant to pro tanto settlements, must have effect according to their terms and the intentions of the parties thereto. The pro tanto settlement and release in this case is clear and unambiguous in its terms as to what damages the proceeds were intended to include and exclude. Paragraph 7 of the settlement states:
"`Given [the worker's] significant permanent physical impairment, disfigurement, loss of earnings, loss of earning capacity, past medical expenses, physical pain and suffering, mental anguish and loss of enjoyment of life, the parties hereto hereby stipulate and agree that no portion of this settlement should be considered recovery for future medical or vocational expenses.'
"The Court notes that this issue was just before the Alabama Court of Civil Appeals in Automotive Wholesalers v. Kruetzer, [796 So.2d 1110 (Ala.Civ.App.2000)]. The case was reversed in part because `the employee presented no evidence other than his statement to show he was not compensated for the medical expenses when he settled with the tortfeasor.' In this case, not only is there admitted into evidence the affidavit of [the employee's] attorney that the settlement proceeds were apportioned in that manner, but also the pro tanto settlement and release itself.

*919 "Another factor is that the claim against the manufacturer of the alleged defective hook is still pending and set for trial in January, 2001.
"After considering all of the evidence presented and for the above reasons, the Court finds it would be inequitable to attribute any of the pro tanto settlement proceeds toward future medical and vocational expenses, and the Court determines that Skilstaf is not entitled to have any of the proceeds apportioned to future medical and vocational expenses."
(Emphasis in original.)
In December 2000, the worker settled after mediation with the remaining third-party defendant for $650,000. The mediator's letter outlining the terms of the agreement states:
"Given the severity of the injury and the disputed liability, no allocation is being made in connection with the $650,000 settlement set out above for future vocational or medical benefits which may become due under the workers' compensation act."
The worker moved the court to conduct a hearing as to Skilstaf's subrogation rights with respect to the second settlement. Following a hearing, the court entered an order on June 5, 2001  again in both cases, CV-99-94 and CV-97-398  determining that "no part of [the worker's] latest recovery from the third-party tortfeasors is attributable to [the worker's] future medical or vocational costs."
On July 30, 2001, the circuit court entered an order dismissing all third-party defendants in CV-97-398 and dismissing Skilstaf as an intervenor. On August 31, 2001, Skilstaf appealed to the Alabama Supreme Court. The supreme court transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.

I.
The appeal designated as number 2001172 (CV-99-94) must be dismissed because it is from a nonfinal order. The trial court's June 5, 2001, "Order Regarding Subrogation Interest" recites that "[t]he Judicial Assistant shall set the workers' compensation case [CV-99-94] for trial on the merits." An entry for June 13, 2001, on the case action summary sheet in CV-97-398, the third-party action, recites: "Set for trial Oct. 17, 2001 at 9:00 A.M. on worker comp. issue." Despite the fact that no judgment on the merits had been entered in the action seeking workers' compensation benefits, Skilstaf filed a notice of appeal in CV-99-94, the workers' compensation action, on July 9, 2001, purporting to appeal from the "Order Regarding Subrogation Interest."
An appeal ordinarily lies only from a final judgment. Bean v. Craig, 557 So.2d 1249, 1253 (Ala.1990). An order is generally not final unless it disposes of all claims or the rights and liabilities of all parties. Ex parte Harris, 506 So.2d 1003, 1004 (Ala.Civ.App.1987). The only exception to this rule is when the trial court certifies a judgment as final pursuant to Rule 54(b), Ala. R. Civ. P. Bean, 557 So.2d at 1253. The appeal in CV-99-94 is from the trial court's "Order on [Skilstaf's] Subrogation Interest," obviously a reference to the settlement in the third-party action, CV-97-398. Thus, at the time Skilstaf filed its notice of appeal in CV-99-94, there had been neither a trial nor a judgment in the action seeking workers' compensation benefits. Appeal number 2001172 is, therefore, dismissed as being from a nonfinal order. The remainder of our discussion in this opinion relates to case number CV-97-398 and appeal number 2001250.

*920 II.
The pertinent portion of § 25-5-11(a), Ala.Code 1975, states that "[f]or purposes of this amendatory act, the employer shall be entitled to subrogation for medical and vocational benefits expended by the employer on behalf of the employee." (Emphasis added.) In Ex parte BE & K Construction Co., 728 So.2d 621 (Ala.1998), the Alabama Supreme Court stated:
"The use of the word `expended' indicates to us that the Legislature contemplated subrogation as to all medical benefits paid, regardless of when such benefits were paid. We can draw no inference from the statutory language or from the presumed purpose of the statute that would indicate that the Legislature, by using the word `expended,' intended to allow the employer subrogation as to those expenses it had already paid, but not as to those amounts it is legally required to `expend' in the future."
728 So.2d at 623. The court held that, by amending § 25-5-11(a),
"the Legislature intended that in situations where the injured employee recovers from a third-party tortfeasor, the amount of that recovery attributable to the employee's medical or vocational expenses should be exhausted before the employer or its workers' compensation insurer is obligated to resume payment of those expenses."
728 So.2d at 624. The court continued:
"In reaching this conclusion, we recognize that when a workers' compensation claimant has also filed a third-party action, the parties in the third-party action should make a concerted effort to ensure that any recovery, whether by settlement or by trial, is fairly apportioned so as to designate how much of the recovery is attributable to medical (and vocational) expenses, both past and future. Therefore, it is in the capable hands of the trial judges presiding over the third-party actions to determine to their satisfaction the amount of each award in a third-party action to be attributed to the employee's medical (or vocational) expenses."
728 So.2d at 624.
In Miller & Miller Construction Co. v. Madewell, 736 So.2d 1098 (Ala.Civ.App.1998), rev'd, 736 So.2d 1104 (Ala.1999), opinion on remand from the Supreme Court, 736 So.2d 1107 (Ala.Civ.App.1999) ("Miller I"), an injured worker settled a product-liability claim against third-party tortfeasors and then sought future medical benefits from his employer pursuant to § 25-5-77, Ala.Code 1977. The employer contended that the worker was required to exhaust the proceeds of his settlement before it was liable for any future medical benefits. Both parties moved for a summary judgment. The trial court entered a summary judgment for the worker, and this court affirmed. The supreme court reversed this court's judgment and remanded the case
"with instructions to have the trial court conduct a hearing to determine, using equitable principles applicable to subrogation rights, which part of [the worker's] settlement is attributable to medical expenses."
Miller I, 736 So.2d at 1105 (footnote omitted). On remand, the trial court concluded that the worker's settlement did not" `equitably or fully compensate [him] for the injuries he sustained'" and that "`no portion'" of the settlement was attributable to future medical expenses. Miller & Miller Constr. Co. v. Madewell, 766 So.2d 855, 856 (Ala.Civ.App.2000) (opinion on return to remand) ("Miller II"). This court concluded that the trial court's reliance on the "made-whole" requirement of Powell v. Blue Cross & Blue Shield, 581 So.2d 772 *921 (Ala.1990), was erroneous after Powell was overruled by Ex parte State Farm Fire & Cas. Co., 764 So.2d 543 (Ala.2000). Id. See also Automotive Wholesalers of Alabama v. Kruetzer, 796 So.2d 1110 (Ala.Civ.App.2000), wherein this court stated:
"`Section 25-5-11(a), Ala.Code 1975, does not require [the employer] to prove that [the worker] had been fully compensated, or would enjoy a double recovery [from its settlement with the third-party tortfeasor], in order for its subrogation right to arise under that section of the Workers' Compensation Act.'"
796 So.2d at 1113 (quoting River Gas Corp. v. Sutton, 701 So.2d 35, 38 (Ala.Civ.App.1997)). Consequently, in Miller II, this court reversed the trial court's judgment and remanded the case for the trial court to determine what portion of the worker's settlement with the third party was attributable to future medical expenses. Id.
On remand, the trial court again decided that "no portion" of the settlement was attributable to future medical costs. On the third appeal, this court recounted the evidence indicating that the worker would have future medical needs and expenses. Once again, we reversed the judgment of the trial court and remanded the case with instructions "to reconsider the evidence. . . and apportion a part of the settlement as future medical expenses." Miller & Miller Constr. Co. v. Madewell, 829 So.2d 778, 781 (Ala.Civ.App.2002) ("Miller III") (two judges concurring and two judges concurring in the result). Judge Murdock, concurring in the result, stated:
"The inquiry is not solely one of what portion of the recovery the parties  neither of which is the employer or its insurer, and neither of which represents the interest of the employer or the insurer in structuring the settlement  actually attributed to future medical expenses."
Miller III, 829 So.2d at 782 (Murdock, J., concurring in the result) (emphasis added).
Based on BE & K, the three Miller decisions, and Kruetzer, we conclude that apportionment is not purely a question of fact solely dependent upon the intention of the settling parties. Instead, it is a mixed question of law and fact. See Miller III, 829 So.2d at 781 (Murdock, J., concurring in the result):
"[T]he trial court must examine not only the evidence before it, but also must apply the `equitable principles applicable to subrogation rights' to determine what portion of the recovery, in equity, is to be considered attributable to future medical expenses."
829 So.2d at 782 (quoting Miller I, 736 So.2d at 1105).
In the present case we hold that because the worker recovered for his on-the-job injury from third-party tortfeasors and the evidence indicated that the worker will have future medical expenses, a portion of the recovery must, by operation of law, be attributed to future medical expenses. The evidence was undisputed that the worker would have significant and continuing medical expenses. The trial court was presented with evidence indicating that those expenses would be between $542,311.22 and $589,043.
The trial court's determination that "no portion" of the settlement agreement was attributable to future medical expenses is not supported by the facts or the law applicable to this case. We therefore reverse the judgment in case number CV-97-398 (appeal number 2001250) and remand the cause with instructions to reapportion the settlement consistent with BE & K.
2001172  APPEAL DISMISSED.
2001250  REVERSED AND REMANDED WITH INSTRUCTIONS.
*922 THOMPSON and PITTMAN, JJ., concur.
YATES, P.J., concurs specially.
MURDOCK, J., concurs as to case no. 2001172; and concurs in the result as to case no. 2001250.
YATES, Presiding Judge, concurring specially.
I concur with the majority in its dismissal of the appeal designated as no. 2001172 (CV-99-94), because that appeal is from a nonfinal order.
I further concur with the majority's statement as to the current status of the law as it pertains to an employer's subrogation rights as to future medical benefits when the employer has recovered from a third-party tortfeasor. I write, however, to express my deep concern over the inherently unjust and unfair result that occurs in this case, and that could occur in other cases, as a result of the current status of the law in this area.
An employer is not required to prove that an injured employee is made whole or will enjoy a double recovery in order for its subrogation rights to arise under the Workers' Compensation Act. Ex parte State Farm Fire & Cas. Co., 764 So.2d 543 (Ala.2000); Miller & Miller Constr. Co. v. Madewell, 766 So.2d 855 (Ala.Civ.App.2000); and Automotive Wholesalers of Alabama & Georgia/Self-Insured Workers' Compensation Fund v. Kruetzer, 796 So.2d 1110 (Ala.Civ.App.2000). Because of the often complex nature of the third-party actions that arise in this situation coupled with the expense of litigating such actions and the severity of the injuries, including significant physical impairment and disfigurement, loss of earning capacity, pain and suffering, mental anguish, and loss of enjoyment of life, it cannot be presumed that an employee will be made whole. In fact, as the majority opinion points out, in this case counsel who had represented Williams in the third-party action testified that because of the complexities of the third-party action and the severity of Williams's injury, the settlement obtained was insufficient to make Williams whole.
Williams initially settled with seven of the eight third-party defendants for a total of $1 million. The settlement agreement expressly stated that no portion of the settlement included a recovery for future medical or vocational expenses. Thereafter, a hearing was held to determine Skilstaf's subrogation rights. Evidence was presented indicating that Williams was 34 years old; that he had a life expectancy of 36.6 more years; that Skilstaf had paid Williams $21,870.50 in temporary total disability benefits; and that Skilstaf had paid $406,615.86 in medical expenses on behalf of Williams. Further, evidence was presented indicating that Williams's anticipated future medical expenses were between $542,000 and $589,000. The trial court determined that Skilstaf was entitled to $255,091.82 ($428,486.36 less a 40% attorney fee) in subrogation from Williams and that it would be inequitable to attribute any part of the third-party settlement proceeds toward future medical and vocational expenses. This left Williams with approximately $571,513.64 of the $1 million settlement.
Following mediation, Williams eventually settled with the remaining third-party defendant for $650,000. The mediator stated that because of the severity of Williams's injury and the disputed liability of the third-party defendant, no part of the $650,000 was allocated for future medical or vocational expenses. Again, the trial court entered an order determining that no part of this settlement is attributable to future medical or vocational expenses.
*923 Williams has received a total of $1,221,513.64 from the two settlements ($1 million less $428,486.36 plus $650,000). If Skilstaf is awarded or credited for at least $542,000 of the future medical expenses that Williams is anticipated to incur, his settlement is further reduced to $679,513.64. Williams presented evidence indicating that his lost wages, both past and future, ranged between $698,360 and $799,440 ($60,000 for past lost wages and $698,360 to $739,440 for future lost wages). Thus Williams's lost wages alone exceed the remainder of his settlement by at least $19,846.66 ($698,360 less $679,513.34). Williams is left uncompensated for significant physical impairment, pain and suffering, mental anguish, and loss of enjoyment of life under the current law.
I am not advocating a "double recovery" for injured employees such as Williams. The purpose of the Workers' Compensation Act, however, is to provide fair and just compensation for injured workers such as Williams. As a result, it would appear that before an employer's subrogation rights attach to a third-party settlement, that employer must demonstrate that the injured employee is fully compensated and made whole for all of the damages suffered by him or her. Having expressed my concerns, I am constrained to follow the current law as I understand it; therefore, I concur in the majority opinion.
MURDOCK, Judge, concurring as to case no. 2001172; and concurring in the result as to case no. 2001250.
In case no. 2001250, the trial court in its order stated that the parties did not dispute the subrogation award made to Skilstaf by the trial court for medical expenses already paid. As in Ex parte BE & K Construction Co., 728 So.2d 621 (Ala.1998), therefore, the single issue presented is whether an employer is statutorily entitled to subrogation to recover medical-benefits payments it will be obligated to make in the future.
Both the availability of and the method of subrogation as to medical expenses are governed by our Supreme Court's decision in Ex parte BE & K Construction Co. In Ex parte BE & K Construction Co., the Supreme Court examined the applicable language of § 25-5-11(a), Ala.Code 1975, and concluded that the outcome in each case is to be controlled by equitable principles of subrogation. See also Ex parte Miller & Miller Constr. Co., 736 So.2d 1104 (Ala.1999). As the main opinion notes, the issue presented is a mixed question of law and fact. In most cases where the worker recovers from a third-party tortfeasor for his on-the-job injury and the evidence demonstrates that the worker has had, or will have, medical expenses, a portion of the recovery will be attributable to those medical expenses. I conclude that this is such a case.
While the evidence in this case indicates that the settlement agreement, by its terms, included "no allocation" for future medical expenses, I agree with the majority opinion that, for the reasons stated therein, the settlement agreement is not controlling. The potential subrogee with legal responsibility for paying medical expenses was not a party to that agreement. The future medical expenses will be significant and were known to the parties when they entered into their settlement. In addition, the record does not suggest any equitable defense to subrogation in this case. Applying equitable principles to the record before us, I conclude that a portion of the recovery in this case must be attributed by the court to the employee's medical expenses, both past and future. I therefore agree that this cause should be remanded to the trial court for it to reapportion *924 the settlement consistent with Ex parte BE & K Construction Co.
In her special concurrence, Presiding Judge Yates expresses concern over the amount of the settlement proceeds with which the employee, Williams, will be left "[i]f Skilstaf is awarded or credited for at least $542,000 of the future medical expenses that Williams is anticipated to incur." 895 So.2d at 923. She expresses a "deep concern over the inherently unjust and unfair result" that she states "occurs in this case . . . as a result of the current status of the law in this area." 895 So.2d at 922. I do not share in that concern because, based upon the equitable principles of subrogation that constitute the current status of the law, I cannot assume that the result Presiding Judge Yates describes will obtain in this case.
The Supreme Court in Ex parte BE & K Construction Co. stated that where an injured employee recovers from a third-party tortfeasor, "the amount of that recovery attributable to the employee's medical or vocational expenses" should be exhausted before the employer or its workers' compensation insurer is obligated to resume payment of those expenses. 728 So.2d at 624. The objective, according to the Supreme Court, is
"to ensure that any recovery, whether by settlement or by trial, is fairly apportioned so as to designate how much of the recovery is attributable to medical (and vocational) expenses, both past and future. Therefore, it is in the capable hands of the trial judges presiding over the third-party actions to determine to their satisfaction the amount of each award in a third-party action to be attributed to the employee's medical (or vocational) expenses."
728 So.2d at 624. The Supreme Court concluded its opinion in Ex parte BE & K Construction Co. with the following mandate:
"We reverse . . . and remand . . . to have the trial court conduct a hearing to determine, using equitable principles applicable to subrogation rights, which part of Bussen's settlement is attributable to his medical expenses and thereafter to enter an order allowing BE & K subrogation as to that portion of Bussen's third-party recovery that is attributable to future medical expenses that BE & K would be legally required to pay. When the portion of the recovery that is attributed to future medical expenses is exhausted, BE & K will then be required to resume payment of medical expenses."
728 So.2d at 624. See also Ex parte Miller & Miller Constr. Co., 736 So.2d at 1105 (reversing and remanding for a hearing to determine "which part of [the employee's] settlement is attributable to medical expenses"); 2 Terry A. Moore, Alabama Workers' Compensation § 21:59 (1998); 2 Terry A. Moore, Alabama Workers' Compensation §§ 21:68 and 21:68.50 (Supp.2001). See generally 73 Am.Jur.2d Subrogation §§ 1-6 and 10-17 (2001).
In light of the foregoing, I concur in the result reached by the majority in case no. 2001250.