[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1173 
This is the fourth appeal arising out of a dispute between an employee, Gary Wayne Madewell, and his employer, Miller and Miller Construction Company, Inc., concerning the employer's claim to subrogation as to funds recovered by the employee pursuant to a $400,000 settlement of a separate third-party tort action. For a more thorough description of the pertinent procedural history leading to the judgment of the Madison Circuit Court currently under review, we refer the reader to the *Page 1174 
opinions issued by this court and the Alabama Supreme Court in the three previous appeals. Miller Miller Constr. Co. v. Madewell,736 So.2d 1098 (Ala.Civ.App. 1998) (per Yates, J., with two judges concurring in the result), rev'd, Ex parte Miller Miller Constr. Co.,736 So.2d 1104 (Ala. 1999) ("Miller I"); Miller Miller Constr. Co. v.Madewell, 766 So.2d 855 (Ala.Civ.App. 2000) ("Miller II"); and Miller Miller Constr. Co. v. Madewell, 829 So.2d 778 (Ala.Civ.App. 2002) ("Miller III") (per Pittman, J., with one judge concurring and two judges concurring in the result).
 Procedural Abstract
We first briefly summarize the status of this protracted litigation. It has been authoritatively decided by the Alabama Supreme Court that the employer is entitled to be subrogated to that portion of the employee's third-party recovery that is properly attributable to compensation for both the past and future medical expenses the employer has paid or would be legally required to pay to the employee. Miller I, 736 So.2d at 1105. The employer's workers' compensation insurer has undisputedly received reimbursement of $11,924.67 representing past medical expenses. However, the parties continue to dispute the extent to which the employer is entitled to a credit for future medical benefits. Most recently, inMiller III, this court reversed a judgment that had been entered by the trial court pursuant to our direction in Miller II that the trial court determine the employer's subrogation rights without regard to whether the employee was "made whole" by the $400,000 settlement he recovered from Kaydon Corporation, an alleged third-party tortfeasor. Although the trial court made certain determinations regarding the components and the value of the employee's third-party claim, that court did not allow any credit to the employer for payment of medical expenses in the future. We concluded in Miller III that the trial court erred in finding that no portion of the employee's settlement should be attributed to future medical expenses and in denying the employer's subrogation claim on that basis; we reversed that judgment and mandated on remand that the trial court, in the words of the main opinion, "reconsider the evidence in the record regarding future medical expenses and apportion a part of the settlement as future medical expenses." 829 So.2d at 781.[1]
On remand from this court after Miller III, the trial court entered a new judgment on September 26, 2002. That judgment awarded the employer a net future-medical-expenses credit of $3,932.82, a figure that appears to have been obtained through a relatively complex mathematical formula that took into account a number of intermediate findings of fact and conclusions of law that the employer has challenged on appeal. Extrapolating from the trial court's statement that the employee recovered "only 16% of his actual compensatory damages," the employer suggests, and the employee does not dispute, that the formula used by the trial court in attempting to discern that portion of the employee's third-party recovery that is properly attributable to compensation for both the past and future medical expenses the employer has paid or would be legally *Page 1175 
required to pay to the employee consisted of four steps:
1. The trial court first determined the net third-party recovery that the employee actually received from Kaydon by subtracting (a) the amount previously paid to the employer ($11,924.67) for past medical expenses,[2]
and (b) the employee's total amount of attorney fees and expenses ($138,737.68) from the gross recovery from the third-party settlement ($400,000), resulting in a net third-party recovery of $249,337.65.
2. The trial court divided the net third-party recovery by what it determined to be the employee's potential third-party damages, $1,581,283.80 — i.e., what the trial court determined the employee couldhave recovered as damages had the action against Kaydon gone to trial — to obtain the recovery fraction of 16% stated in the judgment. Among those potential damages, according to the trial court, were (a) future lost wages in the amount of $172,493.78; (b) "past" physical pain and suffering in the amount of $250,000; (c) "past" mental anguish in the amount of $250,000; (d) a "permanent injury" item in the amount of $250,000; (e) "future" pain and suffering and mental anguish in the amount of $621,920; and (f) $36,870.12 representing future medical expenses as calculated under paragraph 3 of this procedural abstract.
3. The trial court determined the employee's grossfuture-medical-expense credit by multiplying the 16% recovery fraction by the employer's future medical expenses, which it found to be $36,870.12; that medical-expense figure was obtained by multiplying (a) the amount of medical expenses the trial court found the employee to have incurred during 1997 ($2,048.34) by (b) the number of years (18) that the trial court found the employee could expect to live. The trial court computed the employer's gross future-medical-expense credit as amounting to $5,899.22.
4. The trial court then imposed an immediate one-third lump-sum attorney fee (i.e., $1,966.40) on that gross future-medical-expense credit, leaving a net future-medical — expense credit of $3.932.82; the trial court ruled that once the employee had incurred future medical expenses equal to that amount as a result of his work-related injury, the employer would resume paying all reasonable and necessary medical expenses resulting from that injury.
 Contentions and Standard of Review
On appeal from the trial court's most recent judgment, the employer, in its brief, does not take issue with the general formula employed by the court, and it concedes that the trial court was empowered to determine the elements of the employee's past and future damages in order to ascertain the proper amount of the employer's credit against the employee's future medical expenses. Rather, the employer challenges a number of values used in the trial court's calculations used to arrive at the $3,932.82 net *Page 1176 
future-medical-expense credit set forth in paragraph 4 of our procedural abstract. Specifically, the employer claims that the trial court erred not only in making its determination as to the employee's future medical expenses, but also in making its determinations regarding the value of the employee's potential third-party damages and its treatment of the attorney fees and expenses incurred by the employee in the third-party action. We note that the determination of what portion of an employee's recovery from a third-party tortfeasor is attributable to the employee's past or future medical expenses involves a mixed question of law and fact. Skilstaf, Inc. v. Williams, [Ms. 2001172, Sept. 20, 2002] ___ So.2d ___, ___ (Ala.Civ.App. 2002).
 Legal Analysis
We turn first to the trial court's determination of the amount of the employee's future medical expenses as outlined in paragraph 3 of the procedural abstract. As we have discussed, the trial court, in determining that the employee's future medical expenses would be $36,870.12, utilized what it found to be the employee's actual medical expenses from 1997 ($2,048.34) and multiplied that figure by 18, a figure representing the trial court's determination of the employee's life expectancy. We agree with the employer that the trial court erred in making that determination.
First, as the employer notes, the trial court found in its August 1999 judgment (after Miller I had been decided but before Miller II was decided) that the employee's life expectancy was 34.7 years "[a]ccording to the mortality tables." In its judgment on remand from Miller III, the trial court purported to redetermine, based upon evidence previously adduced, that the employee's life expectancy was actually 18 years "[d]ue to the serious nature and extent of [his] injuries." The trial court was not, however, free to redetermine the employee's life expectancy because that issue was definitively resolved by the trial court's previous judgment that the employee's life expectancy was 34.7 years, a determination from which neither party sought appellate relief in MillerII. We have held in this very case that such unreviewed findings bind the parties and the trial court in later proceedings. See Miller II, 766 So.2d at 856 (noting that the employee was bound by a provision of original September 1997 judgment finding that he had suffered a 56% loss of earning capacity and holding that on remand the trial court "should exclude any testimony regarding the employee's [then] current vocational or physical condition").[3]
Moreover, we agree with the employer that the trial court, in utilizing the employee's 1997 medical expenses as its benchmark for calculating the employee's future medical expenses, did not afford proper consideration to the testimony and exhibits adduced by the parties during the August 1999 hearing, a hearing held after the Supreme Court, in Miller I, had instructed the trial court to "conduct a hearing to determine, using equitable principles applicable to subrogation rights, which part of [the employee's] settlement is attributable to medical expenses." 736 So.2d at 1105 (footnote omitted). With regard to the evidence presented during the August 1999 hearing concerning the employee's future medical expenses, the main opinion in Miller III noted: *Page 1177 
 "Karen Crockett, a registered nurse and the owner of a private rehabilitation facility, performed a medical-needs analysis for the employee. Her analysis indicates that the employee will have a $1,200 to $2,500 annual expense for doctor visits. Dr. Lynn Boyer, a neurologist who is treating the employee, submitted an analysis that the employee will be taking several prescription medications on a long-term basis including pain medication, antidepressants, antiseizure medication, and other medication for various medical problems resulting from his work-related head injuries. The record indicates that the cost for these medications could exceed $5,000 per year."
829 So.2d at 781.
Despite our reliance upon the above-described evidence in reversing the trial court's March 2001 judgment denying a future-medical-expense credit to the employer, the trial court's most recent judgment flatly states that Dr. Boyer's deposition transcript contains "no figure requested or assigned for the cost of future medical care"; moreover, the trial court purports to find Crockett's medical-expense testimony "speculative" and "unreliable" because certain tests, procedures, and physician consultations have not been ordered by a physician or undertaken by the employer. Although we recognize the discretionary role afforded trial courts in crediting or discrediting testimony, the trial court in this case effectively ignored not only the testimony of Crockett and Dr. Boyer that was central to our reversal in Miller III but also the testimony of the employee himself indicating that he had undergone treatment and a number of the procedures that those medical witnesses had identified as reasonable and necessary with respect to the employee's future care. Specifically, evidence indicated that those reasonable and necessary treatments and procedures included seeing Dr. Boyer every four to six months, undergoing blood tests on each visit to Dr. Boyer, undergoing electroencephalogram ("EEG") tests approximately every other visit, and having reported to hospital emergency rooms three times in the year preceding entry of the judgment reviewed in Miller II. In light of that evidence, coupled with the trial court's error in redetermining the employee's life expectancy, we readily conclude that the trial court erred in calculating the employee's future medical expenses (a figure used in paragraph 2(f) and 3 of the procedural abstract, supra).
The employer next contends that the trial court erred in determining several components of the employee's potential third-party damages
outlined in paragraph 2 of the procedural abstract. The employer does not challenge the trial court's inclusion of the $250,000 figure representing physical pain and suffering (paragraph 2(b)), the $250,000 figure representing mental anguish (paragraph 2(c)), and the $250,000 figure representing "permanent injury" (paragraph 2(d)) in calculating the potential third-party damages — similar figures appear in the trial court's March 2001 judgment reviewed in Miller III. However, the employer, noting that the trial court's March 2001 judgment did not expressly refer to future pain and suffering or future mental anguish, contends that the trial court could not properly assess, on remand afterMiller III, an additional $621,920 specifically for "future" pain and suffering and mental anguish (i.e., the figure specified in paragraph 2(e) of the procedural abstract). The employer contends that "the trial court has made this determination in order to artificially inflate the value of [the employee's] third party claim" in order to "severely reduce the employer's *Page 1178 
credit." Regardless of whether the employer has correctly or incorrectly imputed ulterior motives to the trial court, the trial court's assessment of an additional $621,920 in "future" damages for pain, suffering, and mental anguish in its judgment on remand from this court after MillerIII was decided was procedurally improper.
In its March 2001 judgment that was reviewed in Miller III, the trial court (1) determined that the employee had "presented substantial evidence showing damages for physical pain and suffering" and "set
compensation for th[at] element of damage[s] at $250,000.00"; (2) determined that the employee had "presented substantial evidence showing damages for mental anguish" and "set compensation for mental anguish in the amount of $250,000.00"; and (3) determined that the employee had "presented substantial evidence of permanent injury" and "set damages for permanent injuries in the amount of $250,000.00." Those determinations as to the employee's damages regarding his claimed physical pain and suffering and his mental anguish did not differentiate between "past" and "future" damages. Rather, those determinations indicate an intent to adjudicate all of the damages the employee would have been entitled to receive from Kaydon as to those elements had the third-party action been prosecuted to a judgment. Those determinations, like the trial court's life-expectancy determination, were not appealed by any party in Miller III and were left undisturbed by our narrow mandate that the trial court "reconsider the evidence in the record regarding future medical expenses and apportion a part of the settlement as future medical expenses." 829 So.2d at 781. The trial court therefore erred in reexamining, after Miller III was decided, its previous determinations with respect to the employee's mental-anguish and pain-and-suffering damages.
However, for the same reason that we conclude that the trial court erred in reexamining its mental-anguish and pain-and-suffering determinations, we conclude that the trial court did not err in carrying forward into its September 2002 judgment its earlier determination of the employee's lost wages (i.e., the $172,493.78 figure identified in paragraph 2(a) of the procedural abstract). In its March 2001 judgment on remand from Miller II, the trial court expressly relied upon the testimony of Patsy Bramlett, a vocational expert, in determining that, based upon a 56% vocational disability, the employee had suffered a loss of future wages, after reduction to present value, of $172,493.78. While the employer takes issue with the trial court's calculation of the present value of the employee's lost wages, that matter was definitively settled by the trial court in its March 2001 judgment. Had the trial court utilized a different figure in its calculations in its September 2002 judgment, it would have gone beyond our mandate in Miller III to reconsider the record evidence regarding future medical expenses and to apportion a part of the settlement as representing future medical expenses.
The employer also contends that the trial court's method of determining the employee's net third-party recovery, as described in paragraph 1 of the procedural abstract, was erroneous. The employer contends that the employee's net third-party recovery should include, rather than exclude, the employee's attorney fees and expenses. The employer contends that allowing the employee to offset his "collection costs" improperly prevents its subrogation interest from attaching to the entirety of the settlement obtained by the employee. *Page 1179 
Again, we must agree with the employer. In 1981, we held that an employer's right of reimbursement with respect to benefits paid to an employee for an injury that is compensable under our workers' compensation laws extends to the entire amount of any judgment or settlement paid by a third-party tortfeasor. Fitch v. Insurance Co. ofNorth America, 408 So.2d 1017 (Ala.Civ.App. 1981). In Fitch, we held that the total amount of attorney fees expended by an employee in obtaining a third-party recovery should not be deducted from the settlement proceeds ultimately obtained but, instead, that the employer in that case was responsible for a pro rata share of those attorney fees (and permissible expenses) based upon the following formula:
 Employer's reduced liability = X ___________________________ __________________________ Third-party recovery Atty. Fees Expenses
(where "X" represents the employer's pro rata share). That formula was later employed by our Supreme Court in Maryland Casualty Co. v. Tiffin,537 So.2d 469, 474 (Ala. 1988). While the employee contends that Fitch
should not apply to an employer's medical expenditures on behalf of an employee, we recently held to the contrary in Consolidated ConstructionCo. v. Quinlan, 832 So.2d 648 (Ala.Civ.App. 2002).
While we agree with the trial court that the employer is responsible for a share of the attorney fees and expenses reasonably incurred by the employee in obtaining the $400,000 settlement in the third-party action against Kaydon, Alabama law does not allow for those fees and expenses to be deducted in toto from the pool of funds to which the employer's credit for its medical expenditures on behalf of the employee can attach. The trial court, in deducting attorney fees and expenses as described in paragraph 1 of the procedural abstract and then assessing a lump-sum attorney fee directly against the employer's net future-medical-expense credit as described in paragraph 4 of the procedural abstract, has in effect awarded a double recovery to the employee with respect to those fees and expenses. Although collection costs are to be considered in determining the employer's credit, the trial court erred in directly reducing the employee's recovery by the amount of the attorney fees and expenses incurred in the third-party action as described in paragraph 1 of the procedural abstract.
 Mandate
The trial court's September 2002 judgment made the basis of this appeal is erroneous and must be reversed. The judgment we today reverse is, notably, the trial court's fourth erroneous judgment in this case. With the expectation that a fifth reversal will not be necessary, but with the realization that the trial court has utilized a formula upon which the parties have, at a fundamental level, accepted, we issue the following instructions to guide the trial court on remand:
1. The trial court should first consider the employee's net third-partyrecovery from Kaydon, which is properly determined in this case[4] by subtracting the amount paid to the employer ($11,924.67) for past medical expenses out of the gross recovery from Kaydon ($400,000); that leaves anet third-party recovery of $388,075.40. Mathematically expressed, the employee's net third-party recovery will be *Page 1180 
 Gross third-party recovery 400,000.00 Past medical expenses — 11,924.60
Net third-party recovery 388,075.40
2. The trial court should then divide that net third-party recovery in this case by the proper amount of the employee's potential third-partydamages, which should be determined with reference to the following figures taken from the trial court's March 2001 judgment: (a) $172,493.78 for lost wages, (b) $250,000 for pain and suffering, (c) $250,000 for mental anguish, and (d) $250,000 for "permanent injury." The trial court may not enlarge or reduce those amounts by adding figures for "future" pain and suffering or mental anguish, as it did in the formula it formerly employed (see paragraph 2(e) of our procedural abstract, supra), but it should add the amount of the employee's future medical expenses, as properly calculated in paragraph 3 of this mandate, to the March 2001 damages elements listed in this paragraph. After dividing the netthird-party recovery by the potential third-party damages, the trial court will obtain a recovery fraction that should well exceed the 16% recovery fraction it previously calculated. Mathematically, the formula for determining the recovery fraction will be:
Net third-party recovery = 388,075.40
Potential third-party damages 922,493.78 + fut. med. exp.
3. After calculating the recovery fraction, the trial court should determine the employer's gross future-medical-expense credit by multiplying the recovery fraction by the employee's future medicalexpenses related to his work-related injury (i.e., the annual amount of the employee's medical expenses multiplied by his life expectancy). In determining those future medical expenses, the trial court is to utilize the employee's life expectancy as determined by that court in its August 1999 judgment, i.e., 34.7 years. On remand, the trial court is also to more accurately determine the annual amount of expenses that the employee will incur from the date of the Kaydon settlement until his death by giving proper weight to the evidence adduced at the August 23, 1999, hearing concerning the procedures actually undergone by, and the medications actually prescribed to, the employee as of that date. However, evidence adduced by the parties after August 23, 1999, pertaining to actual or anticipated expenditures is outside the scope of our mandates in Miller II and Miller III and should not be considered. Mathematically expressed, the formula for determining the grossfuture-medical-expense credit will be:
(Recovery fraction) x (annual med. exp. x 34.7)
4. After determining the gross future-medical-expense credit identified in paragraph 3 of this mandate, the trial court should reduce that credit by the employer's pro rata share of the attorney fees and costs reasonably incurred in the employee's third-party action to obtain the employer's net future-medical-expense credit. The pro rata share is obtained by applying the formula set forth in Fitch and adopted inTiffin, i.e., the employer's pro rata share will bear the same proportion to the total fees and litigation expenses reasonably incurred by the employee ($138,737.68) that the gross future-medical-expense credit
obtained by following *Page 1181 
paragraph 3 of this mandate bears to the total $400,000 settlement obtained from Kaydon. We note that that pro rata share may easily be obtained through "cross — multiplication" of the known components of the proportion adopted in Fitch, a process that is mathematically expressed in the following formula:
 (gross future-medical-expense credit) x (138,737.68)
400,000
Once the trial court has followed the numbered steps indicated in our mandate, that court should then add the $11,924.67 that the employee has already repaid the employer's workers' compensation insurance carrier with respect to his past medical expenses to the netfuture-medical-expense credit and thereby obtain the proper aggregate
amount of the employer's credit as to all medical expenses arising from the employee's work-related injury in 1994, both those incurred before the Kaydon settlement and those incurred (and to be incurred) after that settlement. The trial court should then declare that the employer shall be responsible for payment of the employee's reasonable and necessary medical expenses related to his work-related injury only after the total of those expenses accrues to an extent that that aggregate amount is exceeded. In other words, if the total of the employee's reasonable and necessary medical expenses arising since his 1994 injury should ultimately equal or exceed the amount of the future-medical-expensecredit plus the employer's "past-medical-expense credit" of $11,924.67, the employer shall be responsible for paying for all reasonable and necessary medical treatment that is rendered on or after that point for the employee's work-related injury.
 Conclusion
We reverse the trial court's judgment and remand the cause for further proceedings in accordance with our mandate.
REVERSED AND REMANDED WITH INSTRUCTIONS.
CRAWLEY, THOMPSON, and MURDOCK, JJ., concur.
YATES, P.J., concurs in the result.
[1] Judge Murdock, in an opinion joined by Judge Crawley, concurred in the result in Miller III, expressing his view that a determination regarding what amount of recovery from a third — party tortfeasor is properly deemed attributable to an employee's medical expenses is "a mixed question of law and fact." 829 So.2d at 781. We note that that view has since been endorsed by a majority of this court. See Skilstaf, Inc.v. Williams, [Ms. 2001172, Sept. 20, 2002] ___ So.2d ___ (Ala.Civ.App. 2002).
[2] We note that the credit afforded by § 25-5-11(a) with respect to medical and vocational benefits "expended by the employer on behalf of the employee" applies equally to expenditures before and after a third-party recovery. See Ex parte BEK Constr. Co., 728 So.2d 621
(Ala. 1998). Because no issue has been raised in this appeal by either party concerning the propriety of subtracting the direct payment of past medical expenses to the employer from the employee's $400,000 recovery in determining the employee's net third-party recovery, we do not address whether a trial court must, or should, always make a similar allowance where an employer has received payment for past medical expenses directly from an employee's third-party recovery while future-medical-expense credits remain to be determined.
[3] We thus need not reach the employer's alternative contention that the trial court's latest life-expectancy determination is unsupported by medical or other evidence that would contradict the standard mortality tables so as to warrant departure from them.
[4] As stated in note 2, neither party has raised any issue with respect to the propriety, under Ex parte BEK Construction Co.,728 So.2d 621 (Ala. 1998), of excluding past medical expenses from (i) the employee's net third-party recovery, and (ii) the employee'spotential third-party damages discussed in paragraph 2 of our mandate.