THOMPSON, Presiding Judge.
 

 This is the second appeal to this court in this action. In this appeal, Shirley Diane Nichols appeals from the judgment of the Chilton Circuit Court ordering specific performance of a contract for the sale of certain real property. For the reasons set forth herein, we affirm the judgment in part and reverse it in part.
 

 On May 20, 2005, Nichols and Larry Pate (“Mr. Pate”) entered into a contract whereby Nichols agreed to sell certain real property located in Chilton County to Mr. Pate (“the property”). The contract provided that Mr. Pate would purchase from Nichols “21 acres, more or less, on County Road 528, less and except approximately 3 acres reserved by seller, a more accurate legal [description] to be obtained,” for $12,000, with $500 paid immediately as earnest money and the balance paid at the closing of the sale. The contract provided that the sale would be closed and the deed to the property delivered on or before June 15, 2005.
 

 The property that was the subject of the contract was bordered on the west by County Road 523. Nichols’s mother lived directly across County Road 523 on property that was bordered on the east by that road. Mr. Pate and his "wife, Carol Pate (“Mrs. Pate”), owned property directly north of the property that was the subject of the contract.
 

 For reasons that are in dispute, the parties did not close on the sale and Nichols did not convey the property to Mr. Pate as called for in the contract. On July 21, 2005, the Pates sued Nichols, alleging that Nichols had breached the May 20, 2005, contract.
 
 [1]
 
 The Pates requested spe
 
 *400
 
 cific performance of the contract or, in the alternative, an award of damages. They also sought an award of attorney’s fees.
 

 The Pates unsuccessfully attempted personal service of process at two separate addresses in Tennessee, where Nichols resided, and, on August 25, 2005, the Pates filed a motion seeking an order permitting them to serve Nichols by publication, which the trial court granted. On November 15, 2005, the Pates filed a motion seeking the entry of a default judgment based on Nichols’s failure to answer the complaint. On December 18, 2005, following a hearing, the trial court entered the requested default judgment and ordered specific performance of the contract. As part of the default judgment, the trial court ordered:
 

 “That the said contract provided for the [Pates] to purchase approximately 21 acres, less approximately three acres to be reserved by [Nichols]. However, the property to be conveyed was only approximately 13 acres. Therefore, one acre shall be reserved for [Nichols], in the area previously discussed by the parties for a ‘garden spot’ for [Nichols]’s mother.”
 

 The trial court ordered the Pates to pay the remainder of the purchase price, $11,500, to the clerk of the circuit court, and it ordered the circuit clerk to disburse $2,907.02 to the Pates’ attorney as an attorney’s fee and to disburse the remaining amount to Nichols. As ordered, the circuit clerk disbursed $8,592.98 to Nichols, who received and deposited that amount into her account.
 

 On January 16, 2007, Nichols filed a motion to set aside the default judgment pursuant to Rule 60(b), Ala. R. Civ. P. Nichols asserted that the Pates’ attempt to serve her by publication had failed because the Pates had not complied with Rule 4.3, Ala. R. Civ. P. The trial court denied Nichols’s motion to set aside the default judgment, and Nichols appealed.
 

 In
 
 Nichols v. Pate,
 
 992 So.2d 734 (Ala.Civ.App.2008)
 
 (“Nichols I
 
 ”), this court determined that the Pates failed to effect proper service of process on Nichols and, as a result, that the trial court did not obtain personal jurisdiction of Nichols. Thus, we concluded, the trial court’s default judgment was void, and we reversed the trial court’s judgment denying Nichols’s motion to set aside the default judgment. We remanded the cause for additional proceedings.
 
 Nichols I,
 
 992 So.2d at 736-39.
 

 On July 6, 2009, the trial court held a bench trial. At the trial, Mr. Pate testified that in May 2005 Nichols and he discussed his purchasing the property for $12,000. He stated that, at that time, they believed the property consisted of about 21 acres. He testified that Nichols suggested that they have her attorney draw up the contract for the sale of the property. The attorney did so. Mr. Pate testified that the reason Nichols wanted to reserve three acres from the sale of the property was that she wanted to keep those three acres for her mother. He stated that he did not have an objection to that.
 

 Mr. Pate testified that, before June 15, 2005, he obtained a loan in order to purchase the property. He testified that he spoke with Nichols on May 27, 2005, by telephone and told her that he had obtained the loan. He stated that she responded by indicating that she was going to sell the property to some of her relatives. He testified that he went ahead with the loan and notified her by telephone that he was ready to close on the property. He testified that Nichols did not go
 
 *401
 
 through with the closing. He stated that, after the date of the closing passed, he tried unsuccessfully to contact Nichols.
 

 Mr. Pate testified that, upon filing the action for specific performance or damages against Nichols in July 2005, he discovered that the property consisted of 13 acres rather than 21 acres. He testified that, in seeking the default judgment that this court later reversed, he had asked the trial court to reduce the amount of acreage reserved in the contract because he was receiving less property than the 21 acres listed in the contract despite the fact that he was paying the same price for it.
 

 Mr. Pate testified that he had incurred attorney’s fees of $2,907.02 for legal work performed up to the point at which he had obtained the default judgment and that he had incurred legal fees of $4,900 related to the first appeal in the case. Mr. Pate stated that he had incurred attorney’s fees since this court remanded the cause, and his attorney stated that those fees were approximately $8,500. Mr. Pate testified that he believed he should be reimbursed for the cost of those fees, and he stated that he was asking the trial court to order specific performance of the contract between the parties.
 

 Nichols testified that, at the time the parties entered into the contract on May 20, 2005, she did not know the legal description of the property or how many acres it contained. She stated that she objected to preparing a contract at that time because she did not have enough information about the property, but, she stated, Mr. Pate told her that they would “just put down something, just estimate,” so she proceeded with the contract.
 

 Nichols testified that the three acres reserved in the contract contained an orchard of 40 or 50 peach trees and a plum tree that Nichols’s mother, who lived across the street from the orchard, harvested annually. Nichols testified that her intention in reserving the three acres was to maintain ownership of the orchard and to provide a buffer for her mother. She stated that Mr. Pate and she actually measured the area that was to be reserved with a tape measure.
 

 Nichols stated that the closing on the property was supposed to have been held on May 31, 2005, and that the only reason she agreed to sell the property to the Pates was because Mr. Pate had told Nichols that he could obtain the funds to purchase the property within seven days of the execution of the contract, but, she said, he had failed to do so. She stated that, had the Pates been willing to close on the date they had agreed, May 31, 2005, she would have closed on the sale of the property that day. She stated that she had discussed the date of the closing with Mr. Pate over the telephone and that Mr. Pate had attempted to convince her to lower the price of the property or to include the peach orchard in the property to be sold. She stated that she told Mr. Pate that she would not include the peach orchard in the property to be sold. Mr. Pate testified that he did not recall any conversations with Nichols in which he tried to change the terms of their agreement.
 

 Nichols, who resided in Tennessee, testified that when she came to Alabama to close on the sale of the property, Mr. Pate informed her that he did not have the money to purchase the property and that he needed to talk to his banker. She stated that she returned home to Tennessee. She testified that she called Mr. Pate on June 12, 2005, and left him a message indicating that if he wanted to close on the sale of the property, he needed to let her know because the contract called for a closing on or before June 15, 2005. She testified that she did not hear from Mr. Pate, so, on June 17, 2005, she left another
 
 *402
 
 message for Mr. Pate by telephone indicating that, because he was apparently not interested in purchasing the property, she was selling the property to one of her cousins.
 

 Nichols testified that she did not know that the trial court had conveyed the property to the Pates by the default judgment until she received the funds that the Pates had paid into the trial court for the purpose of purchasing the property. Those funds, $8,592.98, represented the $11,500 the Pates had paid into court, less $2,907.02 that the trial court had deducted from that sum as an attorney’s fee to be paid to the Pates’ attorney. Nichols testified that she had deposited the $8,592.98 check into her bank account.
 

 On August 18, 2009, the trial court entered a final judgment in favor of the Pates, vesting title to the property in the Pates, excepting from the property only a single acre rather than the three acres reserved in the contract, and awarding the Pates $4,900 for their “cost and expense.” Presumably, Nichols was entitled to keep the $8,592.98 she had previously received from the trial court and the $500 earnest money the Pates had paid to her.
 

 Nichols filed a motion to alter, amend, or vacate the judgment in which she stated, without elaboration, that the final judgment was not supported by the evidence or the law. The trial court held a hearing on Nichols’s motion, following which it denied the motion. The record does not include a transcript of the hearing. Nichols filed a timely appeal to this court.
 
 [2]
 

 Nichols contends that the contract for the sale of the property was void because that document did not contain sufficient detail to satisfy the Statute of Frauds. Section 8-9-2, Ala.Code 1975, Alabama’s codification of the Statute of Frauds, provides, in pertinent part:
 

 “In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
 

 [[Image here]]
 

 “(5) Every contract for the sale of lands, tenements or hereditaments, or of any interest therein, except leases for a term not longer than one year, unless the purchase money, or a portion thereof is paid and the purchaser is put in possession of the land by the seller....”
 

 With regard to a sale of real property, a writing does not sufficiently comply with the Statute of Frauds unless it “deseribe[s] the land with such certainty that it can be identified without resort to oral evidence,” although “a general description may be made specific and certain by parol evidence and concurrent facts and circumstances sufficient to that end.”
 
 Goodwyn v. Jones,
 
 288 Ala. 71, 75, 257 So.2d 320, 323 (1971).
 

 We need not determine whether the contract into which the parties entered for the sale of the property complied with the Statute of Frauds. The Statute of Frauds is an affirmative defense that is waived if not pleaded. See
 
 Campbell v. Campbell,
 
 371 So.2d 55, 58 (Ala.Civ.App.1979) (“It is the long established law in this state that a defense of the Statute of
 
 *403
 
 Frauds must be raised below in the pleadings or by motion or it is considered waived.”)- In the present case Nichols did not assert the Statute of Frauds as an affirmative defense to the Pates’ claims, and the issue of the applicability of the Statute of Frauds was not litigated at trial. As a result, Nichols has waived the Statute of Frauds as a defense to the Pates’ action, and her arguments with regard to the Statute of Frauds do not provide this court with a basis on which to reverse the trial court’s judgment.
 

 Nichols next contends that the trial court erred in awarding to the Pates the part of the property containing the peach orchard that was specifically reserved for her in the contract. As previously noted, the contract provided that three acres were reserved for her from the tract to be conveyed to the Pates, and the undisputed testimony at trial indicated that the purpose of that reservation was to preserve for Nichols’s mother the peach orchard that existed on those three acres.
 

 The trial court, in reducing to one acre the three-acre exception from the property to be sold, effectively reformed the parties’ contract and caused Nichols to convey property that she had not contracted to convey. We recognize that reformation of a contract can be an appropriate remedy when the parties to the contract are mutually mistaken as to a material fact,
 
 see
 
 § 8-1-2, Ala.Code 1975, and we likewise recognize that it could be argued that the parties’ mistaken belief as to the size of the parcel at issue in this case could constitute such a mutual mistake justifying reformation. However, a court, in reforming a contract, must reform it in such a way as to reflect the parties’ intentions; the court is not permitted to create a new contract for the parties.
 
 See Federated Guar. Life Ins. Co. v. Painter,
 
 860 So.2d 309, 311 (Ala.1978). In the present case, the trial court, in reducing the property reserved for Nichols in the contract, did not reform the contract in such a way as to reflect the parties’ intentions. Instead, it simply rewrote the parties’ contract. Thus, to the extent that the trial court’s judgment reduces from three acres to one acre the amount of property reserved for Nichols under the contract, the judgment is due to be reversed.
 

 Nichols next contends that she should be awarded compensation for work her cousin performed in improving the property, and she argues that, if the peach orchard is returned to her, she is entitled to compensation for the destruction of the peach orchard and for the value of lost sales of peaches and plums from 2006 to 2010. Nichols did not assert either claim in the trial court, and she did not put on any evidence in support of those claims. “This Court cannot put a trial court in error for failing to consider a matter which, according to the record, was not presented to, nor decided by it.”
 
 Rodriguez-Ramos v. J. Thomas Williams, Jr., M.D., P.C.,
 
 580 So.2d 1326, 1328 (Ala.1991). Thus, we will not consider Nichols’s claims in this regard.
 

 Finally, Nichols contends that the trial court erred when it awarded an attorney’s fee to the Pates. She argues that there was no legal basis for any such award and that both parties should have borne, respectively, their costs of litigating the matter. Although we agree with Nichols that there was no basis on which the trial court was permitted to award the Pates an attorney’s fee, Nichols did not object below when Mr. Pate testified as to the amount of the attorney’s fee he had incurred litigating the matter, and she did not object to any such award before the trial court. She raises the issue for the
 
 *404
 
 first time on appeal, and, as a result, we cannot consider it.
 
 See id.
 

 For the reasons set forth above, we affirm the trial court’s judgment in part, reverse it in part, and remand the cause to the trial court for the entry of a judgment consistent with this opinion.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 PITTMAN, BRYAN, THOMAS, and MOORE, JJ., concur.
 

 [1]
 

 . The Pates also named Bonnie Caldwell d/b/a Delta Properties, L.L.C., as a defendant. The trial court subsequently dismissed the Pates’ claims against Caldwell. The dismissal of the Pates' claims against Caldwell was not at is
 
 *400
 
 sue in the first appeal of this action and is not at issue in the present appeal.
 

 [2]
 

 . Although the 42 d day following the trial court’s denial of Nichols’s postjudgment motion was Friday, November 27, 2009, and she did not file her notice of appeal until Monday, November 30, 2009, Nichols’s appeal was timely because Governor Riley ordered the closure of all state offices on Friday, November 27, 2009, in observance of the Thanksgiving holiday.
 
 See
 
 Rule 26(a), Ala. R.App. P.