MOORE, Judge.
Clifton Johnson (“the employee”) filed a claim for workers’ compensation benefits against ArvinMeritor, Inc. (“the employer”), on July 19, 1999. On February 21, 2003, the Fayette Circuit Court (“the trial court”) entered a judgment in which it determined that the employee was 100% permanently and totally disabled as a result of an occupational disease he had contracted in the course of his employment with the employer; the judgment required the employer to pay workers’ compensation disability benefits as well as all the employee’s reasonably necessary future medical expenses related to his occupational disease. The record indicates that the employer paid the benefits as required.
The employee later pursued a claim against alleged third-party tortfeasors for the same occupational disease in a civil action numbered CV-04-06. In November 2008, the employee negotiated a confidential settlement with the third parties that exceeded the past amounts of workers’ compensation disability and medical benefits paid by the employer. Pursuant to Ala.Code 1975, § 25-5-ll(a), the employer had a right to credit the third-party proceeds against its liability for workers’ compensation benefits, see Davidson v. Pet, Inc., 644 So.2d 896 (Ala.1994), and a right to subrogation as to the employee’s recovery of medical expenses from the third parties. See Ex parte Miller & Miller Constr. Co., 736 So.2d 1104 (Ala.1999). Also in November 2008, the employer and the employee negotiated a settlement of *873 the employer’s rights under Ala. Code 1975, § 25-5-11.
On January 27, 2009, the employer and the employee jointly petitioned the trial court to approve their settlement. In that petition, the parties set out their settlement agreement, which, in pertinent part, states:
“a. [The employee] and [the employer] have agreed to settle all of [the employee’s] claims for workers’ compensation benefits, including all accrued benefits of any type and all future benefits which might be owed for permanent and total disability, and for the closing of all future medical expenses, in return for [the employer’s] waiver of its right to credit or reimbursement under Ala. Code [1975], § 25-5-ll(a), and contribution by [the employer] of up to $65,000 for establishment of a Medicare set aside trust.
“b. This agreement closes all of [the employee’s] rights to workers’ compensation benefits of any kind, including, without limitation, medical benefits. A Medicare set aside trust for the future compensable medical expenses of [the employee] will be established. The cost of such Medicare set aside trust is $83,936.17. Upon entry by this Court of the order' described in Paragraph a. above, [the employer] will contribute up to $65,000 to fund the Medicare set aside trust, with the balance of the amount necessary to fund such Medicare set aside trust to be paid by [the employee]. The Parties agree that the establishment of an approved Medicare set aside trust will relieve [the employer] of any future medical expense obligation concerning [the employee].
[[Image here]]
“d. Upon-entry by this Court of an order relieving [the employer] of all obligation to make any further payments to [the employee] for worker’s compensation benefits, medical, rehabilitation, and vocational rehabilitation expenses, [the employer] will waive its right to reimbursement under Ala.Code, § 25-5-11, for all settlements with third party tort-feasors in CV 04-06 made through the date of the approval of such Order.
“e. If [the employer] is not relieved of all obligation to make further payments to [the employee] for worker’s compensation benefits, medical and rehabilitation expenses, [the employer] retains its right to reimbursement under Ala.Code, § 25-5-11.
“f. [The employee] hereby declares and represents to the Court that no representations made by any attorney or agent of [the employer], other than those set forth in this Petition, induced him to enter into this settlement....”
On February 27, 2009, after a hearing, the trial court entered an amended judgment approving the settlement as set out in the parties’ petition.
Five months later, the employee filed a petition with the trial court asserting that no Medicare set-aside trust (“MSAT”) had been established as required by the judgment approving the parties’ settlement and that, despite that failure, the employer had ceased paying his medical expenses. The employee claimed that he was ready, willing, and able to pay $18,936.17 toward the cost of establishing the MSAT but that the employer had informed him that those funds would be inadequate to cover the employee’s portion for the MSAT, the cost of which exceeded the $83,936.17 figure represented to the employee before the settlement. The employee requested to interplead the $18,936.17 to the clerk of the trial court pending the disposition of those funds by the trial court. The employee also requested that the trial court order the employer to pay his accruing *874 medical expenses pursuant to the 2003 judgment.
On January 6, 2010, the employer filed a response to the employee’s petition. In that response, the employer maintained that the parties had reached an agreement in November 2008 pursuant to which the employer would pay a maximum of $65,000 toward the cost of establishing the MSAT and that the employer had then obtained an estimate from a vendor that the cost of establishing the MSAT would be $88,936.17. According to the employer’s counsel, following approval of the settlement, the Centers for Medicare and Medicaid Services informed the parties that the cost of establishing the MSAT would be substantially higher than had been estimated. The employer contended that it was ready, willing, and able to pay the $65,000 that it had agreed to pay, but no more. The employer essentially maintained that the employee was obligated to pay the difference and that the employee was “repudiating” the settlement. The employer asserted that the employee had received funds from the third-party settlement that exceeded the employer’s liability for the employee’s medical expenses and that it therefore had no obligation to pay the employee’s accruing medical expenses. The employer petitioned the court to order the employee to pay all amounts necessary to establish the MSAT that exceeded $65,000.
On January 7, 2010, the trial court conducted a hearing on the matter. At that hearing, the attorney for the employee represented to the trial court that the employer had agreed to pay $65,000 to fund the MSAT and that the employee had agreed to fund “the remainder,” which, in the settlement petition, was represented by the employer to be $18,936.17. After the parties learned that the represented figure was inaccurate because of a “mistake” made by the vendor that had estimated the cost of funding the MSAT, the parties attempted to work out a new settlement to fund the MSAT, but to no avail. The employee had since incurred approximately $1,800 in medical expenses that the employer had refused to pay. Counsel for the employee claimed that, because the time had expired for the employer to obtain relief from the judgment approving the settlement and because the MSAT had not been established, the employer was required to continue paying the employee’s medical expenses. The attorney for the employee represented that the employee remained willing to work out a settlement with the employer to resolve the MSAT funding issue.
The employer’s attorney maintained that the parties had agreed in November 2008 that the employer would contribute $65,000 to fund the MSAT with the employee paying the remainder. At that time, according to the employer’s counsel, the parties did not know the cost of the MSAT, which the employer later obtained from the vendor.
On April 20, 2010, the trial court entered a judgment, finding that the parties had agreed that the employer would pay $65,000 toward funding the MSAT and that the employee “would be responsible for amounts required to fund the [MSAT] if they exceeded $65,000.” The trial court further found that the parties had represented to the court in their joint petition that the amount to fund the MSAT was $83,963.17, which, the trial court found, was a figure obtained by the employer and which had not been described as an “estimate.” The trial court concluded that the employer had induced the employee to agree to the settlement by representing that the employee would have to pay $18,963.17 as his portion of the cost of funding the MSAT. The trial court con- *875 eluded that “[e]quity demands” that the employer pay the difference between what the employer represented was the cost to fund the MSAT and the actual cost to fund the MSAT and that the employee contribute only the $18,968.17 to which he had agreed, which amount the employee was to hold in trust until the MSAT was established. The trial court further ordered the employer to continue to pay the employee’s medical expenses as set out in the 2008 judgment until the MSAT was established, including those medical expenses already incurred to date. The employer appealed that judgment on June 1, 2010.
The employer first argues that it could not be ordered to pay the higher cost for funding the MSAT because, it says, in November 2008 the employee agreed to pay those costs. Whatever the terms of the parties’ settlement agreement in November 2008, those terms are immaterial to the proper disposition of this case. The parties submitted their settlement agreement to the trial court for its approval, pursuant to Ala.Code 1975, § 25-5-56. The judgment approving that settlement superseded any other agreement of the parties and now, like any other consent judgment, establishes the enforceable terms of the settlement. See Ex parte Ingalls Shipbuilding Corp., 32 Ala.App. 609, 613, 28 So.2d 808, 811 (1947) (“[I]f undisturbed[, the order approving the settlement] has the force and effect of a judgment on the basis of which an enforcement may be had for its satisfaction.”); and Birmingham Steel Erectors v. Haynes, 816 So.2d 494 (Ala.Civ.App.2001) (holding that the rights of parties are controlled by judgment approving workers’ compensation settlement and not by parol evidence of other terms). In its judgment approving the settlement, the trial court incorporated the terms of the settlement as represented to it in the joint petition filed by the parties in January 2009. In that petition, the parties submitted that the cost of funding the MSAT was $83,936.17 and that the employer would pay $65,000 toward that amount and the employee would pay the balance. The judgment approved the settlement on those terms only, with no requirement that the employee pay any amount beyond $18,936.17. Hence, we reject any contention that the employee is required to pay a different amount based on any preexisting agreement that was not approved by the trial court.
We do, however, agree that the judgment likewise does not require the employer to pay any additional amount. The judgment adopts the terms of the parties’ joint petition, which explicitly and unambiguously states that the employer shall pay no more than $65,000 to establish the MSAT. Any attempt to alter that arrangement by requiring the employer to pay more than the amount that it agreed to pay would constitute a substantive change to the terms of the settlement agreement and the judgment approving the settlement agreement and not an enforcement of their terms as the employee contends. A court cannot unilaterally modify or supplement the essential terms of a workers’ compensation settlement agreement that has been incorporated into a judgment. See Matthew’s Masonry Co. v. Aldridge, 25 So.3d 464, 469 (Ala.Civ.App.2009). Nothing in the Alabama Workers’ Compensation Act, Ala.Code 1975, § 25-5-1 et seq., authorizes a court to take such an unusual action in relation to a judgment approving a settlement.
The trial court justified its action on its finding that the employer had falsely represented the cost of funding the MSAT. Such a false representation, if proven by competent evidence, would have constituted a sound basis for vacating the judgment *876 approving the settlement, see § 25-5-56; see also Burger-Phillips Co. v. Phillips, 234 Ala. 568, 176 So. 181 (1937), but it would not authorize the trial court to impose a new obligation on the employer that was not contained within the existing judgment. By referring to “equity” when ordering the employer to pay the additional cost of funding the MSAT, the trial court may have been relying on the equitable remedy of reformation, which allows a court to modify the express terms of a contract in cases in which the parties are mutually mistaken as to a material fact. See Ala.Code 1975, § 8-1-2. However, “a court, in reforming a contract, must reform it in such a way as to reflect the parties’ intentions; the court is not permitted to create a new contract for the parties.” Nichols v. Pate, 54 So.3d 398, 403 (Ala.Civ.App.2010) (citing Federated Guar. Life Ins. Co. v. Painter, 360 So.2d 309, 311 (Ala.1978)). Hence, we reverse that portion of the trial court’s judgment requiring the employer to pay the additional cost of funding the MSAT.
This court realizes that its holding leaves the parties at an impasse. Both parties are fully complying with their obligations under the judgment approving the settlement. The employee, on the one hand, has tendered payment of the $18,936.17 as required, and the employer, on the other hand, remains committed to paying the $65,000 it promised to pay. Each party requested the trial court to resolve that impasse by imposing the additional obligation on the other. The parties, however, simply failed to provide in their settlement agreement for the contingency that the cost of funding the MSAT could exceed $83,936.17, and, accordingly, the trial court could not grant either party’s request. Based on the issues raised in this appeal, it is not the province of this court to advise the parties on the appropri-. ate manner to settle their dispute; we may only hold the trial court in error for imposing a legally incorrect remedy.
The parties agreed that the establishment of the MSAT would relieve the employer of the payment of the employee’s future medical expenses. Because of the impasse, it is undisputed that the MSAT has not been established, and, for that reason, the employee maintains that he has a right to continued medical benefits. However, the employer points out that the parties further agreed that
“[i]f [the employer] is not relieved of all obligation to make further payments to [the employee] for worker’s compensation benefits, medical and rehabilitation expenses, [the employer] retains its right to reimbursement under Ala.Code [1975], § 25-5-11.”
The employer maintains that, even if it has not been relieved of its obligation to pay future medical benefits based on the failure to establish the MSAT, it retains the right to suspend the payment of future medical benefits under § 25-5-ll(a).
Although we agree that the employer still retains its rights under § 25-5-11, because it has not yet been relieved of its obligation to pay the employee’s future medical expenses, we do not agree that it has the right, under § 25-5-11, to unilaterally cease paying the future medical expenses as it claims. The employer maintains that it has such a right based solely on the trial court’s factual finding that the employee recovered more from his third-party settlement than the employer had previously paid in workers’ compensation disability and medical benefits. We reject this argument.
In Ex parte BE & K Construction Co., 728 So.2d 621 (Ala.1998), on remand, Bussen v. BE & K Construction Co., 728 So.2d 624 (Ala.Civ.App.1999), our *877 supreme court held that, because an employer has only a right of “subrogation,” not a right of “reimbursement” or “credit,” as to future medical expenses, an employer may withhold payment of future medical expenses only until the future medical expenses received from the third party have been exhausted, after which time the employer or carrier must resume payment. 728 So.2d at 624. As was made clear in a series of subsequent cases, in order to withhold payment of future medical expenses, an employer must first prove the amount an employee recovered from the third-party settlement that was fairly attributable to his or her future medical expenses. See Ex parte Miller & Miller Constr. Co., Inc., 736 So.2d at 1105; Miller & Miller Constr. Co. v. Madewell, 829 So.2d 778, 780 (Ala.Civ.App.2002); Miller & Miller Constr. Co. v. Madewell, 878 So.2d 1171, 1174 (Ala.Civ.App.2003); and Skilstaf, Inc. v. Williams, 895 So.2d 916, 920-21 (Ala.Civ.App.2002), aff'd, 895 So.2d 924 (Ala.2004). Thus, the mere fact that an employee has recovered some unstated and uncategorized amount from a third party that exceeds the past amounts paid by the his or her employer for workers’ compensation disability and medical benefits does not alone entitle the employer to withhold payment of medical expenses.
In this case, the trial court did not make any finding as to the total amount of the employee’s third-party recovery, which was kept confidential, or the amount of the employee’s third-party recovery that was fairly attributable to the payment of his future medical expenses. The record indicates that the employer has not requested a hearing for that purpose as required by the foregoing caselaw. At the hearing held by the trial court on January 7, 2010, the employer did not present any evidence regarding the amount attributable to future medical expenses recovered by the employee from the third parties. Without producing evidence and receiving a determination of the amount of the third-party recovery fairly attributable to the employee’s future medical expenses, the employer cannot unilaterally withhold the payment of the employee’s future medical expenses. To the contrary, the employer remains obligated by the 2003 judgment to continue to pay those expenses, unless and until it is expressly relieved of that obligation by the trial court.
By reserving its rights under § 25-5-11 in the event it was not relieved of its obligation to continue to pay the employee’s medical expenses, the employer did not thereby gain the right to unilaterally terminate its right to pay the employee’s future medical expenses if the MSAT was not established. Therefore, we affirm that portion of the trial court’s judgment requiring the employer to continue to pay the employee’s medical expenses in accordance with the 2003 judgment. The trial court also required the employer to continue paying those medical expenses until the MSAT is established. We note, however, that, in the event the MSAT is not established, the employer’s obligation to pay the employee’s future medical expenses may also be suspended by following the procedure set out in Ex parte BE & K Construction Co., 728 So.2d at 624, and its progeny.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ„ concur.