THOMPSON, Presiding Judge.
Claudia Pearson appeals an April 2, 2015, judgment of the Tuscaloosa Circuit Court denying her claim seeking to require The Westervelt Company (“Westervelt”), a Delaware corporation with its principal place of business in Tuscaloosa, to allow her to inspect certain of its corporate records.
The record on appeal indicates that Pearson was one of several plaintiffs in an earlier action, filed in the Jefferson Circuit Court, against Westervelt, Jon W. Warner, Jr., and others involving claims related to Westervelt’s decision to approve a recapitalization plan. On September 17, 2011, the Jefferson Circuit Court entered a summary judgment in favor of the defendants in that action.[1]
A few weeks after the judgment was entered in the Jefferson Circuit Court action, Pearson sent a letter dated October 6, 2011, to Ray Frank Robbins at Westervelt. Robbins is a vice president of Westervelt and served, at some point in the past, as Westervelt’s general counsel. In that October 6, 2011, letter (hereinafter “the demand letter”), Pearson stated that “I am a record shareholder of [Westervelt],” and she asserted a demand to inspect certain of Westervelt’s records “pursuant to 8 Del. Code 1953 § 220(b).” Specifically, Pearson sought the production of Westervelt’s financial records and “all documents demonstrating” any form of compensation paid to Jon W. Warner, Jr., Michael Case, Alicia Cramer, and Ray Frank Robbins (hereinafter referred to collectively as “the officers”). The record indicates that Warner is the chairman of the board for Wester-velt, that Cramer is a Westervelt vice president, and that Case is the company’s chief executive officer. In the demand letter, Pearson stated that “[t]he purpose of this inspection is for purposes of proper valuation of my shares in Westervelt.”
By a letter dated October 18, 2011, Robbins, on behalf of Westervelt, responded to Pearson’s demand letter, stating that Westervelt would make its financial statements available to her but that Westervelt did not agree that the information concerning the compensation paid to the officers was “reasonably related” to her claimed purpose of using the information for valuing her stock.
On December 8, 2011, Pearson filed a complaint in the Tuscaloosa Circuit Court (“the trial court”) citing § 10A-2-16.02, Ala.Code 1975, and 8 DeLCode § 220(b), and seeking to compel Westervelt to produce its most recent financial records and *75 any documentation pertinent to the specific compensation paid by Westervelt to each of the four officers named in her demand letter. In her complaint, Pearson acknowledged that Westervelt had offered to provide her an aggregate figure of the compensation for the four officers. •
Westervelt moved the trial court to dismiss Pearson's action. The trial court ultimately denied that motion, and Westervelt filed an answer. Westervelt then filed a motion for a summary judgment. While that summary-judgment motion was pending, Pearson filed a motion seeking the recusal of the trial-court judge. The trial-court judge denied the motion to recuse on May 28, 2013. On June 2, 2013, the trial court entered an order stating that the summary-judgment motion was still under advisement.
The record does not indicate whether the trial court ruled on the summary-judgment motion, but the fact that the trial court ultimately conducted a hearing on the merits indicates that it at least implicitly denied that motion.[2] We note that, during the pendency of this action, West-ervelt produced the financial statements that Pearson had requested to inspect and that the trial court required Pearson to execute a confidentiality agreement in order to be allowed to inspect those documents. In addition, Westervelt offered to provide Pearson documentation, revealing the aggregate compensation of the four individual officers for which she had requested compensation information, but Pearson rejected that offer and continued to insist that she was entitled to the specific compensation information for each of the four named officers.
On March 26, 2015, the trial court conducted a hearing on the merits of Pearson’s claim that she was entitled to the specific compensation information regarding each of the four named individual officers. On April 2, 2015, the trial court entered a judgment in favor of Westervelt. The trial court concluded that, given the facts and the procedural history of the action, Pearson had failed to demonstrate that she was entitled to- inspect the remaining documents at issue, and it therefore denied Pearson’s claims, requiring Westervelt to allow her to inspect the compensation records pertaining to each of the four officers. Pearson timely appealed to our supreme court, which transferred the appeal to this court pursuant to § 12-2-7, Ala.Code 1975.
On appeal, Pearson challenges various aspects of the trial court’s judgment determining that she was not entitled to specific compensation information for each of the four officers.
In its April 2, 2015, judgment, as one basis for rejecting Pearson’s claims, the trial court determined that Pearson had not met the requirements of § 10A-2-16.04(b), Ala.Code 1975, which provides a method of inspecting corporate records. Section 10A-2-16,04(b) provides, in pertinent part:[3]
“(b) If a ... foreign corporation with its principal office within this state does *76 not within a reasonable time allow a shareholder to inspect and copy any other record, the shareholder who complies with Section 10A-2-16.02(b) and (c)[, Ala.Code 1975,] may apply to the circuit court in the county where the corporation’s principal office ... is located for an order to permit inspection and copying of the records demanded.... ”
In determining that it could not consider the action, the trial court found that Pearson had not complied with § 10A-2-16.02, Ala.Code 1975, as is required by § 10A-2-16.04(b). Section 10A-2-16.02 states, in pertinent part:
“(b) A shareholder of ... a foreign corporation with its principal office within this state who shall have been a holder of record of shares for 180 days immediately preceding his or her demand or who is the holder of record of at least five percent of the outstanding shares is entitled to inspect and copy ... all of its books, papers, records of account, minutes and record of shareholders, if the shareholder gives the corporation written notice of his or her demand, stating the purpose therefor, at least five business days before the date on which he or she wishes to inspect and copy....”
(Emphasis added.)
The trial court found that Pearson did not own five percent' of the outstanding shares of Westervelt and, therefore, that Pearson had failed to comply with § 10A-2-16.02(b).[4] Specifically, the trial court determined that “[a]lthough Pearson alleged in her complaint and at trial that she is also demanding the records on behalf of shares owned by trusts of which she is a trustee, she made no demand in any representative capacity before filing this action, and she has offered no reason why such a failure should be legally excused.” The record supports the trial court’s finding with regard to the content of Pearson’s October 6, 2011, demand letter. In that demand letter, Pearson alleged, in pertinent part, only that “I am a record shareholder of [Westervelt],” and she then specified the list of information for which she sought inspection.
However, Pearson argues on appeal that the trial court could not properly base a part of its decision on its finding that her complaint did not comply with § 10A-2-16.04(b) because, she says, West-ervelt did not raise that issue, which she characterizes as an issue of “standing.”[5] *77 In asserting that argument in her brief on appeal, Pearson has confused the theory of standing with that of capacity. “Standing ... turns on ‘whether the party has been injured in fact and whether the injury is to a legally protected right.' ” State v. Property at 2018 Rainbow Dr., 740 So.2d 1025, 1027 (Ala.1999) (quoting Romer v. Board of Cnty. Comm’rs of Cnty. of Pueblo, 956 P.2d 566, 581 (Colo.1998) (Kourlis J., dissenting)). A lack of standing may affect the jurisdiction of the court. Penick v. Most Worshipful Prince Hall Grand Lodge F & AM of Alabama, Inc., 46 So.3d 416, 425-26 (Ala.2010). Under the facts of this case, Pearson has standing to assert a claim that she has a right to inspect corporate records. The issue identified by the trial court was whether she had properly complied with applicable statutes in order to assert that right; in other words, whether Pearson had the capacity to assert a claim for the inspection of corporate records. “Black’s Law Dictionary has described the ‘capacity to sue’ as ‘[t]he legal ability of a particular individual or entity to sue in ... the courts of a forum.’ Black’s Law Dictionary 207 (6th ed.1990).” Ex parte Tyson Foods, Inc., 146 So.3d 1041, 1049 (Ala.2013) (Shaw, J., concurring .in the result).
It is clear, therefore, that, in her brief on appeal, Pearson is arguing that the trial court could not determine that she lacked the capacity to seek redress in that court based on her purported failure to comply with § 10A-2-16.04(b). We agree that the issue whether Pearson properly complied with § 10A-2-16.04(b) is one of capacity. See, é.g., CAG MLG, L.L.C. v. Smelley, 163 So.3d 346, 350 (Ala.2014) (“A foreign entity’s failure to comply with the registration Requirements of a statute such as § 10A-1-7.01[, Ala.Code 1975,] is a capacity defense, and it does not per se implicate standing or subject-matter jurisdiction.”); and Penick, 46 So.3d at 425 (“A foreign corporation’s failure to obtain authorization to do business in Alabama is a capacity defense and does not per se implicate standing and subject-matter jurisdiction.”). A lack of capacity is an affirmative defense. Wausau Dev. Corp. v. Natural Gas & Oil, Inc., 144 So.3d 309, 314 (Ala.2013) (quoting Penick, 46 So.3d at 425-26).
Pearson points out that Westervelt did not argue that she had not complied *78 with § 10A-2-16.02 (and thus, by extension, § 10A-2-16.04(b)), and, therefore, she maintains that Westervelt waived any argument it might have asserted regarding her purported lack of capacity by failing to assert that argument as an affirmative defense. Although she cites no supporting authority for this proposition, Pearson is correct that a trial court may not sua sponte assert an affirmative defense on behalf of a defendant. Wausau Dev. Corp., 144 So.3d at 315; see also Waite v. Waite, 891 So.2d 341, 343 (Ala.Civ.App.2004) (“[Although a trial court may dismiss an action on its own motion on a jurisdictional basis, affirmative defenses ... are not jurisdictional bases upon which a court may base a sua sponte dismissal”).
However, the trial court’s error in determining that Pearson lacked capacity based on her purported failure to comply with § 10A-2-16.02 is not dispositive of the issues on appeal. The trial court did.not base its judgment solely on its determination that Pearson lacked capacity to assert her claims because of her purported failure to comply with § 10A-2-16.02.[6] Rather, the trial court also concluded that there were other reasons, “both factual and legal,” to deny Pearson the relief she requested. The trial court noted that, under both Delaware law and Alabama law, a stockholder seeking the inspection of corporate documents must have a “proper purpose” for requesting those documents. Under Delaware law, a stockholder must have a proper purpose, i.e., one that is “reasonably related to such person’s interest as a stockholder,” in order to inspect corporate records; 8 Del. Code § 220(b). See also CM & M Grp., Inc. v. Carroll, 453 A.2d 788, 792 (Del.1982) (discussing the concept of “proper purpose” for a request to inspect corporate records under Delaware law). Section 10A-2-16.02(b) also specifies that a shareholder’s request to inspect corporate records under that subsection is restricted to those requests for which the shareholder has a “proper purpose.” There appears to be no Alabama caselaw interpreting the “proper purpose” requirement under § 10A-2-16.02(b), and the parties, in their arguments to both the trial court and this court, have relied upon Delaware law as to the merits of this issue. We note, however, that older Alabama .caselaw explains that, under previous versions of the statute allowing for the inspection of corporate records, a restriction that the request be for a proper purpose was implied in the law. See, e.g., Alabama Gas Corp. v. Morrow, 265 Ala. 604, 606, 93 So.2d 515, 517 (1957) (“The only limitation expressed in the statute [ (Ala.Code 1940, Tit. 10, § 34) ] is that such right be exercised ‘at reasonable and proper times.’ However, an implied limitation is that it shall not be exercised from idle curiosity or for improper or illegal purposes.”). See also Bank of Heflin v. Miles, 294 Ala. 462, 466, 318 So.2d 697, 700 (1975) (“The only express limitation of our statutory right of inspection is that it must be exercised at reasonable and proper times; an implied limitation is that it must not be exercised from idle curiosity, or for improper or unlawful purposes.”); and Hillman v. Douglas Eng’g Co., 702 So.2d 156, 159 (Ala.Civ.App.1997) (citing Ex parte Miles, 294 Ala. 462, 466, 318 So.2d 697, 700 (1975)) (same).
In her brief on appeal, Pearson insists that Westervelt had the burden of demonstrating that' she did not have a proper purpose in seeking to inspect the records concerning compensation for the *79 officers. The Alabama statutes do not specify which party has the initial burden with regard to a dispute- whether a stockholder should be allowed to inspect corporate records, and neither party has made an argument with regard to how Alabama law might govern this issue. However, Delaware law clearly provides, under facts such as these,, that, “a stockholder has the burden of showing, by a preponderance, of the evidence, a proper purpose entitling the stockholder to an inspection .of every item sought.” Thomas & Betts Corp. v. Leviton Mfg. Co., 681 A.2d 1026, 1028 (Del.1996); see also Seinfeld v. Verizon Commc’ns, Inc., 909 A.2d 117, 121 (Del. 2006) (same); and CM & M Grp., Inc., 468 A.2d at 792 (“The: Statute [8 DelCode § 220] places the burden of proving proper purpose on the shareholder when he seeks inspection of records other than the corporation’s stock ledger or list of shareholders.”). • -
Pearson argues that the evidence in the record does not support the trial court’s determination that she was not entitled to inspect the specific records concerning the officer’s compensation because she did not have a “proper purpose” for the inspection of those records. The evidence at the March 26, 2016, hearing established that Westervelt was founded by Pearson’s great-grandfather and that Jon Warner, Westervelt’s chairman of the board, is Pearson’s cousin. Pearson owns some unspecified amount of Westervelt stock in her own name, is the beneficiary of at least one trust that contains Westervelt stock, and is the trustee of a trust containing Westervelt stock held for the benefit of her mother. As explained earlier in this opinion, the current litigation follows closely after the resolution of earlier litigation in which Pearson was a plaintiff in an action against Westervelt.
Pearson testified that, at some point in the past, she served for approximately 20 years as an active member of the board of directors for Westervelt. Pearson was aware that Westervelt has a compensation and personnel committee, but she stated that she never served on that committee when she was a member of the board of directors. In 2011, Pearson placed an advertisement in The Wall Street Journal offering to sell up to a 38% interest, in Westervelt. Pearson explained that, at that time, she was interested in selling her interest in Westervelt as well as shares that were in trusts; she did not identify the owners or beneficiaries of those trusts.
Pearson testified that she had not actively attempted to sell her shares in Westervelt since 2011 because, she said, she learned that, in order to sell her shares, she needed access to Westervelt’s financial statements and information concerning how much Jon Warner was being paid. Pearson stated that no prospective purchaser of her stock had asked how much Warner earned but that, when a prospective purchaser asked, why she was interested in .selling, she informed that prospective purchaser that she did not believe that the company was well managed and that there were issues related to Warner’s rate of compensation. Pearson stated that she had not again attempted to sell her stock because she had not been allowed to inspect the corporate records she identified in her demand letter.
Pearson admitted that she did not request from Westervelt the names of the four most highly paid executives, or officers. Pearson testified that she included a request, to inspect the compensation records for Ray Robbins, Mike Case, and Alicia Cramer because they were included in a 2007 proposed compensation plan for “highly paid” executives that Pearson opposed, apparently when she was on the *80 board of directors. Pearson admitted, however, that she has no idea what each of the named officers is actually paid. Pearson testified that Westervelt hired a company named Mercer to provide a range or scale of appropriate salaries. She stated that, in 2007, Warner’s salary was in excess of 100% of that proposed scale. Pearson testified that if she were granted the right to inspect records concerning the four officers’ compensation, she would make the determination whether she believed they were overpaid as she had on a previous occasion, that is, by performing research on the Internet to compare the compensation of similarly situated executives.
Pearson stated that she was aware that Westervelt hired Duff & Phelps, an internationally recognized company, to estimate the valuation of the Westervelt’s shares. Pearson stated that the report of the valuation she received as a stockholder, however, stated that the valuation was for the purposes of “planning and for estate-tax ■purposes” and that the letters she received as a stockholder stated that individual stockholders should not use the valuation reached by Duff & Phelps for any purpose other than those stated in the letters.
Pearson testified that she is not an accountant ' but that her understanding is that valuation is calculated partly based on dividends or distributions paid to shareholders. She maintained that if Warner was being paid too much by Westervelt, that excess compensation could instead have been used to pay additional dividends, which, she said, would increase the value of her stock. Pearson’s attorney asked her if the foregoing was known as “a method of normalizing earnings,” and Pearson responded that she did not know but that she had heard that term before. Pearson testified that “it seems fairly simple to me” that if Westervelt pays Warner more than it should, that excessive payment would affect both the profitability of the company and the dividends paid to stockholders.
Westervelt presented the testimony of Dr. B. Perry Woodside III, an accountant with the firm Dixon Hughes, who testified as an expert witness regarding the valuation of shares in a closely held corporation such as Westervelt. Woodside testified that he was hired by Westervelt to offer an opinion regarding whether the records requested by Pearson were necessary in order for Pearson to reach a valuation of her minority interest in Westervelt. Woodside testified that he had been provided the same financial records Westervelt had allowed Pearson to inspect and that he had spoken with Robbins concerning some governance issues. Woodside stated that he concluded that production of the officers’ compensation information was not necessary to the valuation of a minority stockholder’s interest.
Woodside explained that there are three general methods by which to value an interest in a closely held corporation: an income approach, a market approach, or an asset approach. Woodside stated that Pearson’s arguments about possible excessive compensation impacting dividends reflected an income approach to valuation. However, Woodside explained that the information requested by Pearson would assist only in valuing a controlling interest in Westervelt and not a minority interest such as the one claimed by Pearson, both individually and on behalf of the trusts she administers or of which she is a beneficiary. Woodside explained that a minority shareholder’s interest is not valued using a “normalization” adjustment such as the one advocated by Pearson and that, instead, a minority shareholder’s interest would be valued by referencing only the financial information from the company’s *81 operation. Woodside testified that the financial records Westervelt provided Pearson contained the information Pearson needed for a valuation of her interest in the company.
Woodside also stated that the structure of Westervelt and the processes it had in place also indicated that the information Pearson requested was not necessary to her valuation of her interest in the company. Woodside cited facts such as that five of Westervelt’s seven directors were “outsiders,” i.e., not employees or shareholders, and that Westervelt’s personnel and compensation committee comprised only outside directors. Woodside relied upon Westervelt’s corporate structure, as well as Westervelt’s use of well regarded outside consulting firms, as evidence of objectivity in determining compensation and the valuation of the company and as evidence that Westervelt is acting responsibly toward its stockholders.
On cross-examination, Woodside stated that Duff & Phelps, in reaching its valuation of Westervelt, did not make any adjustments to the valuation of.the stock for excessive compensation paid to any of the officers, so he believed that Duff & Phelps deemed the officers’ compensation reasonable. Woodside admitted .that he had not reviewed the financial report from Duff & Phelps but had instead relied on representations concerning that report made to him by Westervelt’s chief financial officer. Woodside testified that Duff & .Phelps used a fair-market value in valuing West-ervelt’s stock and that a minority shareholder’s interest is often discounted to reflect the absence of a controlling interest in the company and the lack of .marketability of the shares.
Woodside agreed that another method to value a minority interest would be through a “fair value” approach, which would involve multiplying the minority interest by the enterprise value, i.e., the value of the entire company. Woodside explained that the “fair value” of the minority interest is calculated by removing the discounts for lack of control or marketability that are applied in determining fair-market value; he also stated that minority interests are not commonly offered for sale according to their “fair value,” i.e., without minority discounts. Woodside testified that a payment of excessive compensation to certain officers “may or may not be” relevant to an inquiry regarding the “fair value” of Pearson’s stock. Woodside concluded by stating that the corporate governance and processes put in place by Westervelt indicated that the officers’ compensation was not excessive.
In reaching its judgment denying Pearson’s request for relief, the trial court made the following pertinent legal and factual determinations:
“Pearson alleges that she needs the compensation documents in . order to place a value on her shares. According to her, she ‘intends to use the documents ■to investigate potential waste and mismanagement in the company related to Jon Warner’s salary.’ Pearson’s trial brief, at 2.[3] However, the Court is not convinced that Pearson’s true purpose for demanding the documents was to place a value on her shares. The request for compensation documents was not limited to those related to Warner, the chairman of the company’s board. Instead, it included documents concerning the compensation of Case, the company’s chief executive officer and president; Robbins, its general counsel and secretary; and Cramer, one of its vice-presidents. By her own admission, Pearson has no reason to suspect that Case, Robbins, or Kramer may be overpaid. Further, despite a claimed interest only in the compensation of the com *82 pany*s most highly paid executives, Pearson only guessed that Robbins and Cramer might fall within that group, and never sought to find out who, in fact, are among the company’s most highly paid executives. ‘Salary is a highly sensitive subject for most people,’ and its production can ‘constitute harassment’ when the information is ‘patently irrelevant.’ Ex parte Crawford Broadcasting Co., 904 So.2d 221, 226 (Ala.2004). The overbreadth of Pearson’s request for compensation documents leads the Court to conclude that the request was made merely to harass the company and the individuals whose compensations were the subject of the request, and was not made to see if the company’s most highly paid executives may be overpaid. See Ex parte Miles, 294 Ala. 462, 466, 318 So.2d 697, 700 (1975) (‘the right of inspection ... must not be exercised from idle curiosity, or for improper or unlawful purposes’).
“Both parties agree that the valuation of one’s shares can be a proper purpose for which a shareholder may request corporate records. However, Pearson, who' is not a financial expert, has provided no real explanation of how she herself could use information concerning the compensation of Warner, Case, Robbins, or Cramer to determine the value of her shares. Furthermore, she offered no testimony from anyone qualified to testify concerning the effect, if any, that any excessive executive compensation could have on the value of her minority interest in the company. Obviously, she has no control over any corporate matter, including executive compensation. Therefore, the Court is not convinced that Pearson needs the requested compensation information to value her shares. See Pershing Square, LP v. Ceridian Corp., 923 A.2d 810, 817 (Del.Ch.2007).
“... The weaknesses in Pearson’s testimony, as well as the testimony of Westervelt’s expert, convince the Court that Pearson does not need the requested compensation information to value her minority interest.
“Westervelt offered the testimony of Dr. B. Perry Woodside, III, a credible financial expert highly qualified to render opinions about what information is necessary to place a value on a minority interest in a closely-held corporation such as Westervelt. Dr. Woodside testified that the compensation information demanded by Pearson is not necessary or essential to the valuation of her inter'est in the company. He based his opinion, in part, on the non-controlling nature of her minority interest. Further, he based his opinion on the company’s voluntary adoption of many of the best principles of corporate governance to ensure that the company’s management and board are acting in the best interests of the company’s shareholders, including: (1) the inclusion of five outsidé (non-employee/non-shareholder) members on its seven member Board of Directors; (2) the preparation of annual audited financial statements; (3) the inclusion of outside directors on the Board’s personnel and compensation committee; (4) the regular evaluation of executive compensation by nationally-known and well-respected compensation consulting firms; and (5) the preparar tion of annual share price valuations by an independent, internationally-known valuation firm that determines the fair market value of the shares without any adjustment for excessive executive compensation. Finally, Dr. Woodside considered the fact that Warner’s compensation has been frozen for five years and that he no longer participates in any incentive plan.
*83 [[Image here]]
Both parties, in arguing this issue, refer to Delaware law concerning the test for determining whether a stockholder seeking to inspect corporate records has stated a “proper purpose” for that request. Although the parties do not specifically address this issue, we note that, because Westervelt is a Delaware corporation, Delaware substantive law may be applied to govern this dispute. See Ex parte Bentley, 50 So.3d 1063, 1074 (Ala.2010) (“[Wjhere the underlying claims implicate issues of corporate governance, the trial court will be constrained to apply the corporate law of Delaware.”); Scrushy v. Tucker, 70 So.3d 289, 298 (Ala.2011) (holding that the substantive law of the state of incorporation governs substantive issues such as the claims regarding the corporation’s internal affairs); and Massey v. Disc Mfg., Inc., 601 So.2d 449, 454 (Ala.1992) (“The established rule of conflicts law is that ‘the internal corporate relationship is governed by the law of the state of incorporation.’ See P. John Kozyris, Corporate War and Choice of Law, 1985 Duke L.J. 1, 15.”).
“The test of a proper purpose is whether it is reasonably related to the plaintiffs interest as a shareholder. 8 Del. C. § 220(b). The propriety of a demanding shareholder’s purpose must be determined from the facts in each case, and the burden of proving a proper purpose is upon the shareholder. Once it is determined that a shareholder has a proper purpose that is primary, any secondary purpose or ulterior motive that the stockholder might have is irrelevant. 8 Del. C. § 220(c); CM & M Group, Inc. v. Carroll, Del.Supr., 453 A.2d 788, 792 (1982); Skouras v. Admiralty Enterprises, Inc., Del. Ch., 386 A.2d 674, 678 (1978); Skoglund v. Ormand Industries, Inc., Del. Ch., 372 A.2d 204, 207 (1976).”
Helmsman Mgmt. Servs., Inc. v. A & S Consultants, Inc,, 525 A.2d 160, 164-65 (Del.Ch.1987).
The parties to this action do not dispute that the valuation of a stockholder’s shares is a proper purpose for which a stockholder may seek to inspect corporate records. See CM & M Grp., Inc., supra (holding that the valuation of a stockholder’s share is considered a proper purpose for which to request to inspect corporate records); Hillman v. Douglas Eng’g Co., 702 So.2d 156, 160 (Ala.Civ.App.1997) (noting that the valuation of a stockholder’s stock is a “legitimate purpose” for which to -inspect corporate records).-
Also, during the pendency of this action and at the final hearing before the trial court, Pearson maintained that the records concerning individual compensation were necessary in order for her to determine if the value of her stock was being affected by waste, i.e., by paying the officers too much. Pearson argues that the investigation of possible waste or mismanagement was another “proper purpose” for which she was entitled to inspect the corporate records at issue in this matter. It does not appear that Westervelt disputes that the investigation of possible corporate waste or mismanagement is a proper purpose for which a stockholder may seek to inspect corporate records, arid Delaware law specifically approves such a purpose. See Security First Corp. v. U.S. Die Casting & Dev. Co., 687 A.2d 563, 567 (Del.1997) (“It is well established that investigation of mismanagement is a proper purpose for a Section 220 books and records inspection.”). However, all the evidence and arguments pertaining to that *84 theory were related to Pearson’s claim that she needed the records concerning the officers’ compensation in order to determine whether any possible mismanagement had affected the value of her stock. In other words, the allegations of possible mismanagement were asserted under the theory in which Pearson alleged that she needed the inspection of the corporate compensation records in order to value her stock. We note .that Pearson argues in her brief on appeal that the trial court failed to make specific findings regarding her claimed “proper purpose” of investigating possible mismanagement through the payment of excess compensation. However, the trial court, in footnote 3 of its judgment, quoted, above, also determined that Pearson’s. allegations pertaining to possible mismanagement of the company were “inextricably intertwined with the issue of alleged excessive compensation.” It is clear that the trial court, in reaching its judgment, rejected both of the stated purposes for which Pearson sought to be allowed to inspect the compensation records for the officers.
The trial court found that, ■ although she cited other bases for doing so, Pearson actually made her request for the specific compensation records for the purpose of harassing both Westervelt and the officers. Pearson argues that the trial court erred in reaching that determination, and she denies that she had an improper purpose for seeking the requested documents, However, as the trial court noted, Pearson, an attorney, testified that it seemed simple to her that the information about the four officers’ compensation was necessary in order for her to value her stock, and she presented no evidence from an accountant or other similar witness that the records she requested were necessary to the valuation of her stock. Westervelt presented the testimony of an expert witness who opined that the records were not needed for the valuation of a minority interest in the company. Further, West-ervelt questioned Pearson i-egarding whether her request for documents was, in actuality, a method of continuing litigation against the company for the purpose of harassment. Although Pearson denied that she had an improper purpose in seeking to inspect the requested records, the record supports a conclusion that the trial court did not find Pearson’s testimony to be credible.
“ ‘When evidence is presented ore ten* us, the trial court is “ ‘unique[ly] positioned] to directly observe the witnesses and to assess their demeanor and credibility.’ ” Ex parte T.V., 971 So.2d 1, 4 (Ala.2007) (quoting Ex parte Fann, 810 So.2d 631, 633 (Ala.2001)). Therefore, a presumption of correctness attaches to a trial court’s factual findings premised on ore tenus evidence. Ex parte J.E., 1 So.3d 1002, 1008 (Ala.2008)....’”
Smith’s Sports Cycles, Inc. v. American Suzuki Motor Corp., 82 So.3d 682, 684 (Ala.2011) (quoting Espinoza v. Rudolph, 46 So.3d 403, 412 (Ala.2010)). Further, it is clear that, in determining that Pearson had not met her burden of demonstrating that she had a proper purpose for seeking the requested records, the trial court considered other factors, including that Pearson presented no expert evidence tending to indicate that the information she needed was necessary for valuation and that she focused her request on specific officers rather than asking the company to identify and allow her to inspect records concerning its highest paid officers.
Given the evidence in the record on appeal as well as the findings in the trial court’s judgment, we cannot say that Pearson has demonstrated that the trial court erred in determining that Pearson failed to *85 meet her burden of demonstrating that her primary purpose for seeking to inspect the corporate records concerning the officers was a proper purpose.[7] Accordingly, we pretermit discussion of Pearson’s arguments that the documents she sought to inspect were necessary for her purported proper purpose of valuing her Westervelt stock and her argument that she should have been awarded a penalty under § 10A-2-16.02(c) for Westervelt’s alleged improper .refusal to allow her to inspect the corporate records she had demanded.[8]
Pearson also argues that the trial court erred in ordering her to pay the costs of the action below. Costs are generally awarded to the prevailing party, in this case, Westervelt. Rule 54(d), Ala. R. Civ. P. In support of her argument, Pearson relies on Bundrick v. McAllister, 882 So.2d 864 (Ala.Civ.App.2003):
“ ‘[A] party aggrieved by an award of costs may appeal the propriety of such an award, even where the merits of the underlying case are not before the appellate court.’ Garrett v. Whatley, 694 So.2d 1390, 1391 (Ala.Civ.App.1997) (citing City of Birmingham v. City of Fairfield, 396 So.2d 692, 694 (Ala.1981)). However, our review of a trial court’s order taxing costs pursuant to Rule 54(d) is limited to determining whether ⅛ clear abuse of discretion’ is present. Garrett, 694 So.2d at 1391.”
882 So.2d at 866.
In support of her argument on this issue, Pearson asserts only that she “stated two proper purposes which justify her inspection request,”, and, she says, the trial court erred in ruling against her. However, we have affirmed the trial court’s judgment on the merits, and, therefore, we cannot say that it abused its discretion in ordering Pearson to pay costs.
AFFIRMED.
PITTMAN, THOMAS, and MOORE, JJ., concur.
DONALDSON, J., recuses himself;

. An appeal was taken from that judgment, and our supreme court affirmed the judgment without an opinion on September 7, 2012. Pearson v. Warner (No. 1110142), 154 So.3d 1098 (Ala.2012) (table),

. The State Judicial Information System indicates that an order was entered on the summary-judgment motion on June 17, 2014. However, no such order is contained in the record on appeal, and neither party has addressed the trial court’s disposition of the summary-judgment motion.

. The parties do not argue, and the facts do not indicate, that § 10A-2- 16.04(a) would govern this action. That section, which references § 10A-2-16.02(a), Ala.Code 1975, governs the production of a limited list of documents, set forth at § 10A-2-16.01(e), Ala. Code 1975, to a shareholder; the documents . that Pearson seeks fall outside the list set forth in § 10A-2-16,01 (e).

. We note that neither party addressed before the trial court or this court the phrase preceding ‘'or” in the relevant part of § 10A-2-16.02(b), which provides that "[a] shareholder ... who shall have been a holder of record of shares for 180 days immediately preceding his or her demand or who is the holder of record of at least five percent of the outstanding shares” has certain rights of inspection of corporate records. (Emphasis added.) Thus, because the issue whether Pearson might have complied with § 10A-2-16.02(b) by virtue of her having owned stock in Westervelt for more than 180 days before she sent her demand letter to Westervelt is not before this court because that issue was not presented to the trial court for its consideration. See Tidwell v. Pritchett-Moore, Inc., 12 So.3d 83, 90 (Ala.Civ.App.2008) (refusing to consider on appeal an issue not presented to the trial court); see also Nichols v. Pate, 54 So.3d 398, 403 (Ala.Civ.App.2010) (" 'This Court cannot put a trial court in error for failing to consider a matter which, according to the record was not presented to, nor decided by it.' (quoting Rodriguez-Ramos v. J. Thomas Williams, Jr., M.D., P.C., 580 So.2d 1326, 1328 (Ala.1991))). Accordingly, in resolving this appeal, we are confined to addressing only those issues argued by the parties before the trial court. Gary v. Crouch, 923 So.2d 1130, 1135-36 (Ala.Civ.App.2005).

. In her appellate brief, Pearson argues that her complaint was valid under Delaware law. She maintains that there is no minimum number of shares that she must own in order to be entitled to inspect corporate records *77 under Delaware law. Pearson is correct that the Delaware statute allowing for inspection of corporate records does not require that a stockholder seeking to inspect corporate records own a certain amount of stock. See 8 Del.Code § 220(b). However, before the trial court, Pearson did not assert the argument that her demand letter and complaint were sufficient under the Delaware statute. Rather, the parties’ arguments and evidence on this issue focused on the amount of stock Pearson owned, together with the amount of stock she controlled as a trustee or.that was owned by a trust of which Pearson was the beneficiary. This court may address only those arguments that were properly presented to the trial court for its consideration. Nichols v. Pate, 54 So.3d 398, 403 (Ala.Civ.App. 2010); Tidwell v. Pritchett-Moore, Inc., 12 So.3d 83, 90 (Ala.Civ.App.2008). Accordingly, we are precluded from addressing the issue whether Pearson’s demand letter and complaint were sufficient under the substantive law of Delaware and, therefore, whether the trial court erred in concluding that her ■demand was insufficient under Delaware law.
We further note that, throughout the litigation below, the parties assumed that Delaware substantive law governs the merits of their dispute, i.e., whether Pearson stated a "proper purpose” for seeking to inspect West-ervelt’s corporate records, and they contested the merits of that issue with reference to Delaware law. As is explained later in this opinion, we have applied the substantive law ' of Delaware, the state in which Westervelt is incorporated, to the determination of the issue whether Pearson stated a proper purpose in seeking the inspection of the corporate records.

. For that reason, and because the parties’ characterization of § 10A-2-16.02(b) might lead to misleading precedent, see note 4, supra, we do not reach the issue whether Pearson’s demand letter was sufficient to constitute compliance with that subsection.

“ 3Although Pearson describes the investigation of potential waste and mismanagement as a second purpose for her request, it is inextrieably intertwined with the issue of alleged excessive compensation.”

. Pearson has argued in her brief that any improper purpose she might have in seeking to inspect the corporate records is irrelevant because, she says, she stated a proper purpose for seeking to inspect those records. That is an accurate statement of the law, See Helmsman Mgmt. Servs., Inc. v. A & S Consultants, Inc., 525 A.2d at 164 ("Once it is determined that a shareholder has a proper purpose that is primary, any secondary purpose or ulterior motive that the stockholder might have is irrelevant.”). However, in asserting that argument, Pearson ignores that the trial court found that she did not have a proper purpose for seeking the compensation records. We have affirmed that finding, and we cannot agree with Pearson that the trial court should have disregarded any improper purpose she might have for seeking to inspect those records.

. Section 10A-2-16.02(c) provides, in part, that
“[a]ny officer or agent who, or a corporation which, without reasonable cause, shall refuse to allow any shareholder ... to examine and make copies of and extracts from its books, papers, records of account, minutes and record of shareholders, for any proper purpose, shall be liable to the shareholder for a penalty of an amount not to exceed 10 percent of thé value of the shares owned by the shareholder, in addition to any other damages or remedy afforded him or her by law.”